BLOUNT, INC., Plaintiff,

v.

The UNITED STATES, Defendant,

and

Hensel Phelps Construction
Co., Intervenor.

No. 90–3974C.

United States Claims Court.

Dec. 20, 1990.

E. Mabry Rogers, Birmingham, Ala., attorney of record, for plaintiff. John J. Park, Jr., Bradley, Arant, Rose & White, and Roy S. Mitchell, Morgan, Lewis and Bockius, of counsel.

Jeffrey J. Bernstein, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. David M. Cohen, Director, Mary Mitchelson, Asst. Director, and Mina Mazaheri, Office of General Counsel, Federal Bureau of Prisons, of counsel.

Eric L. Wilson, Greeley, Colo., attorney of record for intervenor. Julian Hoffar and Watt, Tieder, Killian & Hoffar, of counsel.

## OPINION

FUTEY, Judge.

This pre-award contract action is before the court on plaintiff's motion to enjoin the Bureau of Prisons, United States Department of Justice, from awarding a contract to Hensel Phelps Construction Co. (Hensel Phelps) for the construction of a prison facility in Florence, Colorado. The Contracting Officer (CO) declared plaintiff's bid nonresponsive, finding that plaintiff took exception to the solicitation requirement that the contractor perform 20 percent of the total work on the construction site with the contractor's own organization. Plaintiff asserts that the 20 percent requirement pertains to bidder responsibility, not responsiveness, and therefore, the government, by rejecting plaintiff's bid, violated its obligation to consider Blount Inc.'s (Blount's) offer honestly and fairly. For the reasons stated below, plaintiff's motion for a permanent injunction of the award of the subject contract to Hensel Phelps is denied.

### Factual Background

On October 9, 1990, the Bureau of Prisons, United States Department of Justice, issued an Invitation For Bids (IFB), BOP solicitation No. 262006, Federal Correctional Complex, Florence, Colorado, Package 3, for the construction of a prison facility. The construction project consists of a federal prison camp, a federal correction institution, and central shared facilities. The IFB contained the following Federal Acquisition Regulation (FAR) contract clause:

52.236–1  Performance of Work by the Contractor (Apr 1984).

The contractor shall perform on the site, and with its own organization, work equivalent to at least *20 percent* of the total amount of work to be performed under the contract. This percentage may be reduced by a supplemental agreement to this contract if, during performing the work, the Contractor requests a reduction and the Contracting Officer determines that the reduction would be to the advantage of the Government. [Emphasis added.]

The IFB required all bidders to submit a "Business Management Questionnaire" (also referred to as the business questionnaire). The business questionnaire requested information concerning: (1) a bidder's distribution of work among commercial contracts and government prime contracts; (2) a list of prior contracts performed by the bidder similar to the subject contract; and (3) the total estimated work under the contract that would be completed by the bidder. This requirement is set

forth in the "Contractor Qualifications" section of the IFB. In a separate section, the IFB admonishes:

### NOTICE TO BIDDERS

1. Each bidder shall complete and submit the following clauses and statements with his/her bid(s). Failure to do so may cause your bid(s) to be nonresponsive:

\*    \*    \*    \*    \*    \*

C.   Bid Bond, SD–24   Section J
Business Management Questionnaire
Copy of Small Business Sub–Contracting Plan

Section J of the IFB lists "Documents, Exhibits, and other Attachments" including the three documents referenced above. The listing page bears the following note: "[t]he SF–24 bid bond shall be completed and returned with your bid or the bid may be considered nonresponsive." Section J does not indicate whether the submission of the other recited documents would be considered by the government in determining bid responsiveness.

The Small Business and Small Disadvantaged Business Subcontracting Plan (subcontracting plan) contained in the IFB required bidders to provide a percentage and dollar value breakdown of the total amount of work to be subcontracted to small business concerns and small disadvantaged business concerns. The subcontracting plan also required bidders to indicate the total dollar value of all anticipated subcontracting. On October 29, 1990, the government issued Addendum 6 to the IFB (Item 1, Part 1, Section A), which modified the Small Business and Small Disadvantaged Business Subcontracting Plan submission requirement. Rather than require each

bidder to submit a subcontracting plan, the solicitation was amended to require the successful bidder to provide the government with a plan within 5 calendar days of the bid date.

Plaintiff completed the Business Management Questionnaire, and submitted the questionnaire with its bid. Question 3 of the business questionnaire requested bidders to provide the following information:

Indicate below the total estimated amount of work under [the] contract that your firm will complete (excluding subcontractors): ___% $_____.

In response to this question, plaintiff entered the figures "approximately 10%" and "approximately $6,000,000." Plaintiff's total bid price for the prison facilities contract was $63,287,000.00.

▮▮▮ The Bureau of Prisons conducted bid opening for the prison facilities contract on November 1, 1990, at 2:00 p.m. Plaintiff was the low bidder on the contract. Shortly after bid opening, the CO informed plaintiff that its bid might be considered nonresponsive because plaintiff indicated in the business questionnaire that less than 20 percent of the work under the contract would be performed by the contractor's own organization. The CO requested that Blount verify the amount of work to be subcontracted under the project.[1] Plaintiff responded to the CO's request by letter of November 6, 1990, noting in the letter and accompanying worksheet that approximately $6,000,000.00 of the total contract amount would be performed by Blount's own organization.[2] In addition, the letter stated that, at

---

1. The record indicates that the government did not reject Blount's bid as nonresponsive immediately after bid opening. Rather, the contracting officer (CO) contacted Blount and sought verification of the bidder's response to question 3 of the business questionnaire. Transcript (tr.), pp. 52–54.

2. The November 6, 1990 letter from Blount to the CO states in relevant part:

In summation, we state that the amount Blount allowed in dollars ($6,000,000.00), on the "Business Management Questionnaire," is the amount of work we would self-perform on

the project and this amount more than satisfies the requirements of FAR 52–236.1 of the Contract Documents and the percentage amount (approximately 10%) is in reference only to the percentage of the total project dollar amount.

The post bid opening letter reflects some confusion on Blount's part concerning the self-performance requirement. Blount contends that its response to the government's query was made in the belief that the submitted figures (10 percent/$6,000,000.00) demonstrated compliance with the performance requirement. Ap-

all times, Blount intended to comply with the 20 percent performance requirement.[3] Blount submitted its subcontracting plan to the government on November 7, 1990, more than 5 days after bid opening. In a subsequent letter to the CO,[4] plaintiff contended that its subcontracting plan evidenced Blount's intent to self-perform 22.9 percent of the work when "the requirement is interpreted to be a percentage of the total contract amount."[5] Plaintiff, thereupon, requested permission to change the response to question 3 to conform to its "true intention." Notwithstanding this request, the CO declared plaintiff's bid nonresponsive on November 8, 1990.[6]

On November 12, 1990, plaintiff filed an agency level protest with the Director, Bureau of Prisons, contesting the government's nonresponsiveness determination. In this protest, plaintiff submitted evidence to demonstrate compliance with the 20 percent self-performance requirement of the contract. The CO denied plaintiff's bid protest by letter of November 26, 1990. The CO concluded that Blount's bid was proper-ly rejected as nonresponsive because Blount indicated in the Business Management Questionnaire and the November 6, 1990 letter that it intended to self-perform only 10 percent of the total contract work. The CO also predicated rejection of Blount's bid on the agency's untimely receipt of the bidder's subcontracting plan, even though the plan was previously accepted by the government on November 7, 1990.

Plaintiff filed a complaint for injunctive and declaratory relief with this court on November 29, 1990, requesting that the Bureau of Prisons be enjoined from awarding the contract to any bidder other than Blount. Plaintiff asserts that the government's rejection of its bid was erroneous because: (1) the business questionnaire relates to bidder responsibility and was not designed to determine compliance with the "Performance of Work" clause of the contract and; (2) the "Performance of Work" clause constitutes a matter of responsibility rather than responsiveness. Plaintiff,

---

parently, Blount interpreted the 20 percent requirement to be exclusive of "specialty" contracting work, such as plumbing, heating, and electrical work, which is normally contracted out by the prime contractor. In other words, Blount believed that self-performance of $6,000,000.00 worth of work would satisfy the "Performance of Work" clause because this figure constituted 20 percent of "the total amount of the work to be performed under the contract" after all "specialty work" was deducted from the value of the project. Blount bases this interpretation on FAR 36.501, which governs a procuring agency's use of the "Performance of Work" clause. However, FAR 36.501 merely provides the CO with guidance in determining the level of self-performance required for the project, and does not instruct the contractor to discount specialty work in calculating the percentage of work that it will self-perform. Rather, FAR 52.236–1 requires the contractor to self-perform 20 percent of the total contract amount, without any adjustment for work routinely performed by subcontractors. Therefore, Blount's bid indicated that the contractor would not meet the 20 percent self-performance requirement set forth in the IFB.

**3.** In the November 6, 1990 letter plaintiff maintained that it did not originally interpret the Business Management Questionnaire to be a test of compliance with the 20 percent requirement. Question 3 plainly requires bidders to indicate the total amount of work (excluding subcontrac-tors) that would be self-performed. To the extent that question 3 of the business questionnaire was ambiguous, plaintiff should have sought clarification prior to bid opening. By failing to do so, plaintiff ran the risk of being declared nonresponsive. *Vanderbilt Shirt Company*, 69 Comp.Gen. 20 (1989).

**4.** Although this letter was dated November 6, 1990, the court finds that it was telefaxed to the government on either November 7 or 8, 1990, since the letter references the original November 6, 1990 letter and discusses Blount's submission of the subcontracting plan on November 7, 1990.

**5.** Plaintiff's subcontracting plan was submitted on November 7, 1990, and stated in pertinent part:

(c) The total estimated dollar value of all planned subcontracting (to all types of business concerns) under this contract is $48,800,-000.

This figure represents approximately 77 percent of the total contract price, leaving 23 percent of the work under the contract to be performed by plaintiff's own organization.

**6.** The CO accepted Blount's otherwise untimely subcontracting plan on November 7, 1990. However, the CO did not consider the subcontracting plan in determining that Blount was nonresponsive to the IFB. Tr., pp. 78–79.

therefore, contends that since the proper completion of the business questionnaire was not a prerequisite for bid responsiveness, the government breached its implied duty to honestly and fairly consider Blount's bid. The court held a telephone conference on November 30, 1990, during which defendant agreed not to award the subject contract for 17 days, up to and including December 21, 1990.

Hensel Phelps, the intended awardee of the contract, filed a motion to intervene in this case on December 5, 1990. The court allowed the motion on December 6, 1990.

On December 10, 1990, defendant filed an "Opposition to Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction, and Defendant's Motion to Dismiss." Defendant argues that the CO's determination that Blount was not responsive to the terms of the solicitation was reasonable in light of Blount's response to question 3 of the business questionnaire and should, therefore, not be disturbed by the court. Defendant/intervenor also filed an opposition to plaintiff's request for declaratory relief on December 10, 1990, urging the court to uphold the CO's nonresponsiveness determination. Plaintiff filed a consolidated response to the pleadings and motions submitted by defendant and defendant/intervenor on December 11, 1990. The court conducted a hearing on the merits of the case on December 12, 1990. In addition, the court granted plaintiff's motion for a protective order on December 17, 1990. The protective order extends to exhibits A and B of plaintiff's complaint, as well as the transcript of the December 12, 1990 proceedings.

### Jurisdiction

▮ This court has jurisdiction to review pre-award contract decisions of a government agency pursuant to 28 U.S.C. § 1491(a)(3) (1989). *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1366–72 (Fed.Cir.1983); *National Forge Co. v. United States*, 779 F.2d 665 (Fed.Cir.1985). Section 1491(a)(3) provides:

To afford complete relief on any contract claim brought before the contract is awarded, the court shall have exclusive jurisdiction to grant declaratory judgments and such equitable and extraordinary relief as it deems proper, including but not limited to injunctive relief. In exercising this jurisdiction, the court shall give due regard with the interests of national defense and national security.

Jurisdiction over pre-award controversies is predicated upon an implied-in-fact contract between the participant bidders and the United States which obligates the government to consider offers fairly and honestly. *Keco Indus., Inc. v. United States*, 192 Ct.Cl. 773, 784, 428 F.2d 1233, 1237 (1970); *Heyer Prods. Co. v. United States*, 135 Ct.Cl. 63, 69, 140 F.Supp. 409, 413 (1956); *Paxson Elec. Co. v. United States*, 14 Cl.Ct. 634, 638 (1988). Accordingly, this court possesses jurisdiction to determine whether plaintiff's bid was responsive to the terms of the solicitation. *Olympia USA, Inc. v. United States*, 6 Cl.Ct. 550 (1984).

### Discussion

A. Issue Presented.

▮ The court must determine at the outset whether the "Performance of Work" clause contained in the IFB and the Business Management Questionnaire submitted with Blount's bid relate to bidder responsiveness or responsibility. Responsiveness refers to the question of whether a bidder has promised to perform in the precise manner requested by the government. 48 C.F.R. § 14.301(a); *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277 (1983). Responsibility, by contrast, involves an inquiry into the bidder's ability and will to perform the subject contract as promised. *See* 48 C.F.R. § 9.103 (1988). Matters of bid responsiveness must be discerned solely by reference to the materials submitted with the bid and facts available to the government at the time of bid opening. However, responsibility determinations are made at the time of award. A bidder may present evidence subsequent to bid opening but prior to award to demonstrate the bidder's responsibility. *Mack Trucks, Inc. v. United States*, 6 Cl.Ct. 68,

71 (1984). Therefore, if Blount's representations in the business questionnaire impacted the bid's responsiveness to the IFB, then the CO's rejection of plaintiff's bid was proper. Conversely, if the business questionnaire and the "Performance of Work" clause concern matters of responsibility and plaintiff has otherwise indicated an intent to comply with the IFB specifications, then the court must conclude that the government erroneously rejected plaintiff's bid and grant plaintiff's request for relief. The CO's nonresponsiveness determination will not be overturned by the court unless no rational basis exists for the agency's decision.[7] *Harris Data Communications, Inc. v. United States,* 2 Cl.Ct. 229, 237 (1983) and cases cited therein, *aff'd,* 723 F.2d 69 (Fed.Cir.1983).

B. Responsiveness v. Responsibility.

■ The Federal Acquisition Regulations (FAR) provides the following guidance on the evaluation of bids:

(a) To be considered for award, a bid must comply in all material respects with the invitation for bids. Such compliance enables all bidders to stand on an equal footing and maintains the integrity of the sealed bidding system.

48 C.F.R. § 14.301(a) (1988).

Therefore, a bid which contains a material nonconformity must be rejected as nonresponsive. *Honeywell, Inc. v. United States,* 16 Cl.Ct. 173, 181 (1989), *rev'd on other grounds,* 870 F.2d 644 (Fed.Cir.1989). Material terms and conditions of a solicitation involve price, quality, quantity, and delivery. *Western Roofing Service,* Comp. Gen.Dec. B–234314.2, 89–1 CPD ¶ 486 (1989). The rule is designed to prevent bidders from taking exception to material provisions of the contract in order to gain an unfair advantage over competitors and to assure that the government evaluates all bids on an equal basis. In other words, a bidder cannot receive award by offering a less expensive method of performance than that required by the solicitation. *See* Cibinic and Nash, *Formation of Government Contracts* (2nd Ed., 1986), p. 394.

■ Responsibility concerns how a bidder will accomplish conformance with the material provisions of the contract. *Essex Electro Engineers, Inc.,* 3 Cl.Ct. at 283. Responsibility addresses the performance capability of a bidder, and normally involves an inquiry into the potential contractor's financial resources, experience, management, past performance, place of performance, and integrity. FAR 9.105–1 (1988). *See Comprehensive Health Services, Inc.–Recon.,* Comp.Gen.Dec. B–236266.-5, 90–1 CPD ¶ 376 (1990); *AMKO Construction Co.,* Comp.Gen.Dec. B–234309.2, 89–2 CPD ¶ 35 (1989); *BBC Brown Boveri, Inc.,* Comp.Gen.Dec. B–227903, 87–2 CPD ¶ 309 (1987).

C. The "Performance of Work" Clause.

■ FAR 36.501 provides the following rationale behind the "Performance of Work" clause:

(a) To assure adequate interest in and supervision of all work involved in larger projects, the contractor shall be required to perform a significant part of the contract work with its own forces. The contract shall express this requirement in terms of a percentage that reflects the minimum amount of work the contractor must perform with its own forces.

The "Performance of Work" clause was, therefore, designed to ensure that critical construction contracts are awarded to firms which possess the requisite experience, management, and supervisory capabilities to complete the contract in a timely and satisfactory manner. The clause represents the foregone conclusion that a con-

---

7. Pre-award injunctive relief is an extreme remedy which must be exercised with caution. *Baird Corp. v. United States,* 1 Cl.Ct. 662 (1983). In *Baird Corp.,* the court stated:

Judicial review of an agency's pre-award procurement decision is, and should be, extremely limited in scope. The court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable. It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's determinations ... by clear and convincing evidence.

1 Cl.Ct. at 664 (citations omitted).

tractor with the ability to perform a certain percentage of the contract with its own resources is likely to possess such qualities. In so doing, the "Performance of Work" clause examines the method by which a bidder will meet the obligations of the contract rather than the bidder's promise to perform the contract. In 41 Comp.Gen. 106 (1961), the General Accounting Office (GAO) discussed the reasoning behind a self-performance requirement, and reached the same conclusion:

> [T]he chief purpose of the limitation on subcontracting and the required information as to work to be performed by the bidder's own organization is to limit award to bona fide contractors and to preclude award to those firms whose chief purpose in bidding is to acquire a valuable asset, which in effect may be "peddled" to others interested in performing the work called for. In our judgment, therefore, the purpose of the information is to determine the responsibility of the bidder.

The court finds that the "Performance of Work" clause and question 3 of the Business Management Questionnaire examine the performance capability of bidders and were primarily included in the solicitation to ensure that the successful bidder on the prison facilities project was a responsible contractor.

■ Although the 20 percent self-performance requirement was designed to test bidder responsibility, the court's analysis cannot end here. The court has previously stated that information intended to reflect on bidder responsibility can render a bid nonresponsive if the information indicates that the bidder does not intend to comply with the material requirements of the IFB. *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. at 283, n. 8. *See also Twehous Excavating Company, Inc.*, Comp.Gen.Dec. B–208189, 83–1 CPD ¶ 42 (1983); *Palmetto Enterprises, Inc.*, Comp. Gen.Dec. B–193843, 79–2 CPD ¶ 74 (1979),

*modified on other grounds, K.P. Food Services*, B–198427.2, 82–1 CPD ¶ 289 (1982); *Test Drilling Service Co.*, Comp. Gen.Dec. B–189682, 77–2 CPD ¶ 193 (1977). The "Performance of Work" clause was clearly a term or condition of the IFB. In requiring the contractor to self-perform 20 percent of the work under the contract, the clause directly impacted bid price. The self-performance requirement limited the amount of work which could be subcontracted under the contract. A contractor can generally achieve considerable savings by subcontracting work to firms with lower cost structures who are capable of performing the project with less expense. As such, a contractor may gain a sizeable bid pricing advantage by subcontracting more work than its competitors.[8] Since compliance with the "Performance of Work" clause invariably affected bid price, the "Performance of Work" clause constitutes a material term of the IFB. *Vanderbilt Shirt Co.*, 69 Comp.Gen. 20 (1989). Although the clause was designed to help ensure that award was made to a qualified bidder, the 20 percent self-performance requirement was nevertheless part of the IFB and, therefore, the contractor was expected to comply with this requirement like any other material provision of the contract.

■ Blount completed and submitted the Business Management Questionnaire with its bid. Question 3 of the business questionnaire indicated that Blount would self-perform "approximately 10%" of the total amount of work under the contract. By promising to self-perform only 10 percent of the contract work in the face of the 20 percent requirement imposed by the "Performance of Work" clause, Blount took affirmative exception to a material provision of the IFB. Blount's response to question 3 of the business questionnaire therefore constituted a material deviation from the IFB which rendered its bid nonresponsive at bid opening.[9] Blount could not,

8. Affidavit of Jerry L. Morgensen, pp. 2–3, intervenor's memorandum in opposition to plaintiff's motion for relief.

9. Plaintiff contends that the Business Management Questionnaire is by definition not a contract document and, therefore, merely informational in nature. Blount's response to defen-

thereafter, correct its response to the questionnaire or attempt to explain why its bid was in fact responsive to the IFB.[10]  *Carothers Constr. Inc. v. United States,* 18 Cl.Ct. 745 (1989).

The court's decision is consistent with a line of GAO decisions construing the "Performance of Work" clause.  In 45 Comp.Gen. 177 (1965) (Nomellini protest), the contract contained a "Performance of Work" clause requiring a contractor to self-perform on the site at least 20 percent of the total amount of work under the contract.  The protester indicated in its bid that it would subcontract 90 percent of the

work under the contract.  After bid opening, the protester attempted to cure the erroneous response by demonstrating its intent to self-perform 20 percent of the contract through joint venture partners.  The GAO concluded that the protester was nonresponsive to the solicitation,[11] stating:

[W]e believe that the deviation is one which affects price and gives the bidder the option not enjoyed by other bidders.  It seems reasonable, as contended by Rich, that the extent to which a contractor would be required to move its own facilities and labor to the job site would

---

dant's opposition, p. 6.  However, the fact remains that the business questionnaire was submitted with the IFB and qualified Blount's acceptance of the terms of the contract.  It is well established that material submitted with a bid which takes exception to an IFB requirement renders the bid nonresponsive.  *Eclipse Systems, Inc.,* Comp.Gen.Dec. B–216002, 85–1 CPD ¶ 267 (1985).  *Union Metal Mfg. Co., Electroline Div.,* Comp.Gen.Dec. B–209161, 82–2 CPD ¶ 402 (1982).  Blount's representation in the business questionnaire therefore rendered its bid nonresponsive irrespective of whether the questionnaire was a contract document.

10.  Plaintiff maintains that the CO's request for verification after bid opening of Blount's response to the self-performance question of the business questionnaire reveals that the agency actually intended the requirement to be a matter of responsibility.  Blount's response to defendant's opposition, p. 6.  The court notes that the CO's conduct after bid opening cannot convert a matter of responsiveness into a matter of responsibility.  FAR 14.406–3 provides that a procuring agency's authority to permit corrections of bid mistakes is limited to bids that are responsive to the solicitation and may not be used to make an otherwise nonresponsive bid responsive.  Blount's bid as submitted was nonresponsive to the IFB and the CO acted improperly by seeking clarification of the bidder's response to the Business Management Questionnaire.  Put another way, had the CO awarded the contract to Blount after permitting the bidder to change its response to question 3 of the business questionnaire, the award would be void *ab initio*.  *Prestex, Inc. v. United States,* 162 Ct.Cl. 620, 320 F.2d 367 (1963).

11.  Plaintiff argues that the court should disregard the decisions of the comptroller general in this area because these decisions are irreconcilable.  Although decisions of the comptroller general are not binding on this court, the court will consider GAO decisions which are rationally based and address issues not previously decided by the Claims Court.  *See generally Essex*

*Electro Engineers, Inc. v. United States,* 3 Cl.Ct. 277, 282 (1983); *International Graphics, Div. of Moore Business Forms, Inc. v. United States,* 5 Cl.Ct. 100, 105 (1984).  The court finds that the GAO decisions interpreting the "Performance of Work" clause are rationally based and logically consistent.

In 41 Comp.Gen. 106 (1961) and 41 Comp. Gen. 555 (1962) (the cases relied on by plaintiff), the GAO's conclusion that a bidder's failure to submit information related to the contractor's ability to self-perform 20 percent of the work did not render the bid nonresponsive was predicated on the fact that nothing in the bid indicated any intent to not be bound by all the requirements of the IFB.  In 45 Comp.Gen. 177 (1965), the bidder clearly demonstrated an unwillingness to comply with the 20 percent self-performance requirement.  In finding the protester's bid nonresponsive, the GAO explained:

The cases relied upon in 41 Comp.Gen. 106 and 41 Comp.Gen. 555 are distinguishable from the immediate case.  Unlike here, in neither of those two cases was the bid nonresponsive to the 20–percent requirement.

As the GAO decisions indicate, a bid containing information which takes specific exception to the self-performance requirement of an IFB is clearly distinguishable from a bidder's failure to furnish requested information pertaining to this requirement prior to bid opening.  In both cases, the agency seeks information relating to bidder responsibility.  However, in the case of the former, the bidder has affirmatively stated its intent to not perform or has at least called into question its intent to perform in the manner required by the government and, therefore, cannot be permitted to amend its bid after bid opening to show that it will in fact perform exactly as the government requested.  In the case of the latter, the bidder's intention to comply with the material requirements of the IFB has not been called into question and the bidder may furnish information after bid opening to demonstrate compliance with the self-performance requirement since the bid was otherwise responsive to the IFB.

affect the cost of performance. As also contended by Rich, price could be affected by the 20–percent requirement because a bidder who contemplated subcontracting out 90 percent of the work would have a greater opportunity for "bid shopping" than a bidder who was limited to subcontracting 80 percent of the work. Thus under the joint venture's bid that bidder would have an option because, while the joint venture has now attempted to explain away its nonresponsiveness, the situation it could stand on the contention that it is not responsive because of the 90–percent response if it did not desire to accept an award. This option is prejudicial to other bidders in that it gives the joint venture a privilege which is not available to them.

\* \* \* \* \* \*

In view of the foregoing, we conclude that the deviation by the joint venture is a material one which cannot be waived and accordingly the bid of the joint venture should be rejected.[12]

As noted in the Nomellini protest, a bid which takes exception to the self-performance requirement of the solicitation must be rejected as nonresponsive in order to prevent the bidder from achieving an unfair competitive advantage over other bidders and to ensure that the government evaluates all bids on an equal basis. This is a longstanding rule in government contracts designed to protect the integrity of the procurement system. *International Engineering Co. v. Richardson*, 367 F.Supp. 640, 651 (D.D.C.1973).

Accordingly, the court finds that Blount took exception from the IFB requirement that a minimum of 20 percent of the work be performed on site by the contractor utilizing its own resources when it indicated in the Business Management Questionnaire that it intended to self-perform "approximately 10%" of the total amount of work under the contract. The court, therefore, concludes that the CO properly rejected Blount's bid as nonresponsive.

---

**12.** The GAO has subsequently reaffirmed its position that such a bid must be rejected as nonresponsive in *C. Iber & Sons, Inc.,* Comp.Gen.Dec.

*Conclusion*

For the foregoing reasons, the court finds that the Bureau of Prison's decision to reject Blount, Inc.'s bid for being nonresponsive to the solicitation was rationally based and will not be disturbed by the court. Plaintiff is, therefore, not entitled to the equitable relief in the complaint filed on November 29, 1990.

IT IS HEREBY FURTHER ORDERED:

1. Plaintiff's motion for a TRO is moot.

2. Plaintiff's motion for a preliminary and permanent injunction to enjoin the government from awarding the contract to Hensel–Phelps or any bidder other than Blount, Inc., is denied.

3. Defendant's and defendant/intervenor's motion to dismiss plaintiff's complaint with prejudice is granted.

The Clerk is directed to enter final judgment denying the equitable relief requested and dismissing the complaint. No costs.

B–208365.2, 83–1 CPD ¶ 424 (1983) and *Contra Costa Electric, Inc.,* Comp.Gen.Dec. B–190916, 78–1 CPD ¶ 268 (1978).