**BEAN DREDGING CORPORATION and Marine Weeks, Inc., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 91–35C.

United States Claims Court.

Feb. 11, 1991.

As Corrected Feb. 14, 1991.

Peter M. Kilcullen, Washington, D.C., for plaintiffs. Christopher M. Johnson, Washington, D.C., of counsel.

Patricia L. Petty, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

MARGOLIS, Judge.

This government contracts case is before the court after a full hearing on the plaintiffs' complaint for preliminary and permanent injunctive and declaratory relief. The plaintiffs, government contractors, bid on a contract that was awarded to another contractor. The plaintiffs contend that the other contractor's bid should be rejected as non-responsive because it failed to include a schedule listing equipment to be used on the contract project. The plaintiffs seek injunctive and declaratory relief preventing award of the contract to the other contractor and declaring the plaintiffs as the lowest responsive bidder. After careful review of the record, and after hearing the testimony of witnesses and oral argument, this court denies the defendant's motion for summary judgment as moot, denies the plaintiffs' request for RUSCC 11 sanctions, denies the plaintiffs' request for injunctive and declaratory relief, and dismisses the plaintiffs' complaint with prejudice.

## FACTS

The plaintiffs, Bean Dredging Corporation and Weeks Marine, Inc. ("Bean/Weeks"), bid on a contract pursuant to a solicitation issued by the United

States Army Corps of Engineers ("Corps"), Savannah, Georgia District, to perform maintenance dredging of the entrance channel to the Brunswick, Georgia harbor. Bean/Weeks maintains that the solicitation required bidders to complete and submit with their bids a Plant and Equipment Schedule. The Schedule required the bidders to list the equipment they proposed to utilize on the project, including the number, type and capacity of dredges.

At the top of Page B–2, the Schedule was annotated in bold:

### * * * IMPORTANT * * *

INFORMATION REQUESTED BELOW MUST BE SPECIFIC. GENERALITIES WILL NOT BE ACCEPTED. FAILURE TO PROVIDE THIS INFORMATION MAY RESULT IN REJECTION OF THE BID.

The Schedule was referenced in Paragraph H.19 of the solicitation which contained Engineering Federal Acquisition Regulation ("EFAR") Section 52.003–4502. This provision specified that:

(a) The Contractor agrees to keep on the job sufficient plant to meet the requirements of the work. The plant shall be in satisfactory operating condition and capable of safely and efficiently performing the work as set forth in the specifications and the plant shall be subject to inspection by the Contracting Officer at all times. The plant listed on the Plant and Equipment Schedule, ENG Form, 1619–R (SECTION B), is the minimum which the Contractor agrees to place on the job unless otherwise determined by the Contracting Officer, and its listing thereon is not to be construed as an agreement on the part of the Government that it is adequate for the performance of the work.

Bean/Weeks maintains that the provision specifies the minimum equipment which the contractor was obligated to place on the project and that satisfaction of the provision constituted a material requirement of the solicitation.

Bean/Weeks claims that they submitted their bid in compliance with the terms and requirements of the solicitation. Accordingly, Bean/Weeks committed a dredge, the *Eagle*, and other equipment to the project. Bean/Weeks claims that it adjusted its bid price upward to reflect the obligation of equipment to the project.

The bid opening took place on December 20, 1990. The Corps determined that the North American Trailing Company ("NATCO"), submitted the low bid of $1,549,250 and that Bean/Weeks was second at $1,979,800. Bean/Weeks claims that at the bid opening NATCO did not return the Schedule with its bid or obligate any equipment to the performance of the contract. A representative of Bean/Weeks, Ancil Taylor, called this to the attention of the Corps representative at the bid opening. Subsequently, the Corps determined that NATCO's bid was responsive.

Bean/Weeks filed a protest with the Corps on December 31, 1990 contending (1) NATCO's bid was non-responsive, (2) NATCO's bid should have been rejected, and (3) the Corps should award the contract to Bean/Weeks. The Corps denied the protest on January 24, 1991 by written decision. On the basis of a series of decisions by the Comptroller General, the agency held that NATCO's failure to specify the plant and equipment to be used is a matter of responsibility, not responsiveness.

In this court, Bean/Weeks requests that NATCO's bid be declared non-responsive and that Bean/Weeks be declared the lowest responsive bidder under the solicitation. Bean/Weeks contends that NATCO's bid was non-responsive. Plaintiffs assert that because the requirement of listing equipment on the Schedule defines the minimum equipment that the contractor must obligate to the contract, this requirement goes to responsiveness, not responsibility. Therefore, the Corps' failure to reject NATCO's non-responsive bid violated FAR § 14.404–2 which requires rejection of a non-responsive bid. Bean/Weeks further argues that NATCO should not now be able to submit a Schedule because doing so would amount to correcting a bid after bid opening. According to Bean/Weeks, the Corps' failure to award the contract to Bean/Weeks also violated FAR § 14.407–1,

which requires an award to the lowest responsive bidder, and constituted a breach of the government's implied duty to consider all bids received in a fair and equitable manner.[1]

## DISCUSSION

The scope of review of the Corps' pre-award procurement actions is extremely limited. *Baird Corporation v. United States*, 1 Cl.Ct. 662, 664 (1983). As the court stated in *Baird*, "[t]he court should not substitute its judgment on such matters for that of the agency, but should intervene only when it is clearly determined that the agency's determinations were irrational or unreasonable. It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's determinations." *Id.*

The court weighs the following factors in examining whether injunctive relief is warranted: (1) whether there is a likelihood that the plaintiffs will succeed on the merits; (2) whether the plaintiffs will suffer irreparable injury if the injunctive relief is not granted; (3) whether the threatened injury to the plaintiffs outweighs the harm to the defendant and other third parties; and (4) whether granting the relief is in the public interest. *Southwest Marine, Inc. v. United States*, 3 Cl.Ct. 611, 613 (1983); *Yachts America, Inc. v. United States*, 3 Cl.Ct. 447, 449 (1983). Because injunctive relief is so drastic in nature, the plaintiffs must demonstrate their right to injunctive relief by clear and convincing evidence. *Southwest Marine*, 3 Cl.Ct. at 613; *Baird*, 1 Cl.Ct. at 664.

### Likelihood of Success on the Merits

The central issue in this case is whether listing the plant and equipment on the Schedule is a matter of responsiveness or responsibility. Bean/Weeks argues that

the plant and equipment listing requirement is a question of responsiveness, that NATCO's bid should have been rejected, and that the Corps' failure to reject NATCO's bid violated FAR provisions and demonstrates that the bid of Bean/Weeks was not fully and fairly considered. The government argues that the plant and equipment listing requirement relates to responsibility, that the Corps was not required to reject NATCO's bid, and that the bid of Bean/Weeks was fully and fairly considered by the Corps.

Responsiveness addresses whether a bidder has promised to perform in the precise manner requested by the government. 48 C.F.R. § 14.301(a) (1988). To be considered for an award a bid must comply in "all material respects" with the invitation for bids. "A responsive bid is one that, if accepted by the government as submitted, will obligate the contractor to perform the exact thing called for in the solicitation." *Wright Associates, Inc.*, Comp.Gen.Dec. B–238656, 90–1 CPD ¶ 549 (June 12, 1990).[2] If there is material nonconformity in a bid, it must be rejected. *Blount, Inc. v. United States*, 22 Cl.Ct. 221, 227 (Cl.Ct.1990). Material nonconformity goes to the substance of the bid which affects the price, quality, quantity, or delivery of the article or service offered. *Blount*, 22 Cl.Ct. at 227; *Gardner Zemke Company*, Comp.Gen.Dec. B–238334, 90–1 CPD ¶ 372 (April 5, 1990).

Responsibility addresses the issue of the performance capability of a bidder, which can include inquiries into financial resources, experience, management, past performance, place of performance, and integrity. *Blount*, 22 Cl.Ct. at 227 (citing FAR 9.105–1 (1988) and Comptroller General cases). In contrast to responsiveness, a bidder may present evidence of responsibility after bid opening up until the time of

---

1. The government agreed in open court that this court has jurisdiction over the plaintiffs' claim. *See* 28 U.S.C. § 1491(a)(3) (1988). With regard to an earlier misunderstanding about the nature of the plaintiffs' complaint and this court's jurisdiction, this court denies the plaintiffs' request for RUSCC 11 sanctions.

2. While decisions of the Comptroller General are not controlling, this court accords deference to these decisions in recognition of GAO's special expertise. *See, e.g., Honeywell, Inc. v. United States*, 870 F.2d 644, 647–48 (Fed.Cir.1989); *Howell Construction, Inc. v. United States*, 12 Cl.Ct. 450, 452 (1987).

award. *Id.* at 226 (citing *Mack Trucks, Inc. v. United States,* 6 Cl.Ct. 68, 71 (1984)).

■ In terms of identifying whether a particular requirement is related to responsiveness or responsibility, the distinction "is whether the bidder will conform to the IFB, as opposed to how the bidder will accomplish conformance." *Essex Electro Engineers, Inc. v. United States,* 3 Cl.Ct. 277, 283 n. 8 (1983) (citing *Skyline Credit Corporation,* Comp.Gen.Dec. B–209193, 83–1 CPD ¶ 257 (March 15, 1983)). Stated another way, "the concept of responsibility specifically concerns the question of a bidder's performance capability, as opposed to its promise to perform the contract, which is a matter of responsiveness." *Id.* (citing *Propper Manufacturing Company,* Comp. Gen.Dec. B–206193.3, 82–1 CPD ¶ 269 (March 22, 1982)). Because the Schedule in this case requests information regarding plant and equipment, this court takes note that:

> [w]hen information or data is required to be submitted with the bid, the Comptroller General will consider the purpose for which the data or information is to be used when determining whether it is a matter of responsiveness or responsibility. Thus, if descriptive data is to be used to determine a bidder's ability or capacity to perform, the matter will be one of responsibility, and failure to submit information with the bid will have no adverse effect on the bidder ...

J. Cibinic & R. Nash, *Formation of Government Contracts* 405–06 (1986) (citing Comptroller General cases).

■ The Comptroller General has consistently held that information about the equipment to be used on a project relates to the contractor's capability and ability to perform the work specified in the solicitation, and hence the request for this information is a matter of responsibility. *Wright Associates, Inc.,* Comp.Gen.Dec. B–238756, 90–1 CPD ¶ 549 (June 12, 1990); *Great Lakes Dredge and Dock Company,* Comp.Gen.Dec. B–221768, 86–1 CPD ¶ 444 (May 8, 1986); *Kelly and Associates,* Comp.Gen.Dec. B–215641, 84–2 CPD ¶ 75

(July 20, 1984); *Seacoast Trucking & Moving,* Comp.Gen.Dec. B–200315, 80–2 CPD ¶ 235 (September 30, 1980); *see also All Clean, Inc.,* Comp.Gen.Dec. B–228608, 87–2 CPD ¶ 154 (August 12, 1987). For example, in *Seacoast Trucking,* each bidder was required by the invitation for bids (IFB) to submit a detailed description of equipment to be used in collecting refuse. The low bidder did not submit this information until after bid opening. The second lowest bidder protested, contending that the lowest bid was not responsive. The Comptroller General held that the requirement to provide the information regarding the type of equipment to be used relates to the capacity and ability to perform, and hence is a matter of responsibility. Failing to include the schedule, the Comptroller found, did not limit the obligation of the contractor to perform. *See also Blount,* 22 Cl.Ct. at 229 n. 11.

This court followed decisions of the Comptroller General, including *Seacoast Trucking,* in *Heli–Jet Corporation v. United States,* 2 Cl.Ct. 613, 620 (1983). In that case, the low bidder failed to list accurate information on the aircraft it intended to use to perform a government contract to provide aerial insecticide spraying of national forests. The court found that the request for information on the equipment to be used related to the contractor's capability or ability to perform, and thus to responsibility. *Id.* There is no reason to depart from the precedent established by the Comptroller General cases and by *Heli–Jet* that the requirement to list plant and equipment relates to responsibility.

■ The language contained in Paragraph H.19(a) does not make listing the equipment to be used on the project a material requirement. The statement that "the plant listed on the Plant and Equipment Schedule ... is the minimum which the contractor agrees to place on the job unless otherwise determined by the Contracting Officer ..." is a matter of responsibility when read in the context of the remainder of the sentence and of Paragraph H.19. The remainder of the sentence states that listing of the equipment is *not* to be con-

strued as an agreement on the part of the government that it is adequate for the *performance* of the work. If listing the equipment were a material requirement, then the government would be bound to accept the equipment as adequate at the time of bid opening. Instead, the government can require additional equipment to enhance the ability and capability of the contractor to perform the work. This listing requirement is clearly a matter of responsibility.

The language in Paragraph H.19 upon which the plaintiffs rely also must be viewed in context. Even within subparagraph (a), the second sentence states that "[t]he plant shall be in satisfactory operating condition and capable of safely and efficiently performing the work as set forth in the specifications and the plant shall be subject to inspection by the Contracting Officer at all times." Other subparagraphs concern the condition, repair, maintenance, and capacity of the plant and equipment. Paragraph H.19, read as whole, addresses the ability and capacity of the contractor to perform the work required by the solicitation. Thus reading Paragraph H.19 as a whole further supports this court's conclusion that the listing requirement relates to responsibility, not responsiveness.

This conclusion is supported by the fact that the language at the top of page B–2 of the solicitation states that "failure to provide this information may result in rejection of the bid." The warning specifically states that the bid "may" be rejected for failure to submit the information. This interpretation is consistent with the listing requirement relating to responsibility, not responsiveness. If the submission of this information was a material requirement of the solicitation, then it would have to be rejected. *Blount*, 22 Cl.Ct. at 227. The word "may" strongly suggests that a bidder might have to present evidence of responsibility in order to be awarded the contract, but that it is not an essential requirement of the solicitation. Hence, this case is distinguishable from *Blount*, because NATCO's failure to provide the plant and equipment information did not indicate that

NATCO did not intend to comply with material requirements of the IFB.

NATCO's failure to submit the Plant and Equipment Schedule did not render its bid non-responsive. Bean/Weeks is not likely, therefore, to prevail on the merits in this case.

*Other Factors*

 The court also weighs the factors in determining whether the plaintiffs are not entitled to injunctive relief. It is true that without injunctive relief a disappointed bidder would be irreparably harmed, because the plaintiffs could recover only bid preparation costs, not lost profits, through an action at law. *See, e.g., Essex Electro Engineers,* 3 Cl.Ct. at 287 (citing cases). However, the fact that the plaintiffs are unlikely to succeed on the merits far outweighs this factor.

 In terms of balancing whether the threatened injury to the plaintiffs outweighs the harm to the defendant and other third parties, the government has submitted an affidavit of Major Elias S. Smith stating that both the local community and the government will suffer if the contract to dredge the Brunswick Harbor is not awarded in a timely manner. According to Major Smith, the channel to the Brunswick Harbor is presently in an unsafe navigable condition, and the situation is getting worse by the day. The court also heard testimony from Walter Shaaf, of the U.S. Army Corps of Engineers, that navigability of the waters was increasingly difficult and that some ships had to be only partially loaded given the depth of the water. This evidence established that as the delay in dredging the channel increases, the danger to ships navigating the entrance channel also increases. This court finds that there is threatened injury to the government and to third parties if the award is delayed.

In assessing whether granting injunctive relief is in the public interest, this court notes the importance of preserving the integrity of the competitive procurement system and promoting fair competition, as argued by the plaintiffs. This court, however, disagrees with the plaintiffs, as al-

ready explained, that the procurement decisions in this case were unfair. Moreover, this is not a situation in which the lowest bidder has been declared non-responsive, *see Essex Electro Engineers*, 3 Cl.Ct. at 287–88, but rather granting injunctive relief in this instance would delay the award of the contract to the lowest bidder.

## CONCLUSION

The plaintiffs have not demonstrated their right to injunctive relief by clear and convincing evidence. Because this court finds that the listing of plant and equipment on the Schedule relates to responsibility rather than responsiveness, it is unlikely that the plaintiffs will succeed on the merits. A weighing of all of the factors compels this court to deny injunctive relief. Moreover, the plaintiffs have not shown that the agency's determination, that the equipment listing requirement relates to responsibility, was irrational or unreasonable. Absent such a showing, this court will not substitute its own judgment for that of the agency.

Accordingly, the defendant's motion for summary judgment is denied as moot, the plaintiffs' request for RUSCC 11 sanctions is denied, the plaintiffs' request for injunctive and declaratory relief is denied, and the plaintiffs' complaint is dismissed with prejudice. The Clerk is directed to enter final judgment denying the equitable relief requested and dismissing the complaint. Each party shall bear its own costs.