**SKYTECH AERO, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 91–888C.**

United States Claims Court.

May 29, 1992.

Virgil W. Young, Little Rock, Ark., for plaintiff.

Domenique Kirchner, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on defendant's motion to dismiss and motion for summary judgment. For the reasons set forth below, the court grants defendant's motion for summary judgment.

## FACTS

On May 8, 1990, defendant, through the United States Army Engineer District in Vicksburg, Mississippi, requested bids for aerial photography services to be performed in the Vicksburg area. The solicitation required bidders to furnish all equipment, transportation, and materials necessary to perform and deliver aerial photography. The length of the contract was to be one year, with options to extend for a total period not to exceed five years. The Army received timely bids from three concerns: Future Photo & Mapping, Inc., Skytech Aero, Inc., and Calhoun Forestry Mapping Service.

Future Photo was determined to be the low bidder; however, several defects were contained in its bid. It had failed to sign the bid's Schedule and continuation sheet, it did not attach its corporate seal next to the signature of Future Photo's corporate secretary, and it had made errors in some of its calculations. On June 15, 1990, the Army requested that Future Photo verify its bid. Future Photo responded, but the verification was unclear as to the bid prices and the Army had to request a second verification. On June 26, 1990, Future Photo's bid was verified.

The next day, the Army requested Future Photo to provide financial information and a completed camera calibration report. A calibration report dated December 21, 1989, was submitted on a camera owned by E. Coyote Enterprises, Inc.; however, the camera had been sold to the Indiana Department of Natural Resources and was no longer available. On July 3, 1990, the Army contacted Coyote and learned that Coyote had provided a calibration report to Future Photo for a suitable replacement camera. Future Photo then submitted cali-

bration reports for two different cameras owned by Coyote. On July 30, 1990, Future Photo identified the camera it intended to use, and the Army conducted a preaward survey, which included a Dun & Bradstreet report. The preaward survey revealed that in the past Future Photo had been delinquent on loan payments, and that it was then overdrawn on its checking account. However, the Dun & Bradstreet report listed substantial assets for Future Photo, and the preaward survey concluded by recommending completion of the contract award.

Upon learning that Future Photo would be awarded the contract, plaintiff, on August 6, 1990, filed a formal protest based on the following reasons: (1) Future Photo, in its bid, submitted calibration reports for a camera that it neither owned nor had access to; (2) Future Photo made misrepresentations about its financial situation and technical background; and (3) the president of Future Photo failed to sign each bid sheet as required by the contract. The Army requested the bidders to extend their bids while Skytech's protest was evaluated and Future Photo's bid was further verified. By letter, all three agreed to extend their respective bids for sixty days. Plaintiff also granted further extensions and held aside aircraft, camera, and other equipment necessary to perform the contract for a total of 7½ months.

On February 5, 1991, Skytech filed a complaint in this court seeking a writ of mandamus ordering the Army to award Skytech the contract, damages for the Army's failure to fairly and honestly consider Skytech's bid, and arguing that the government should be estopped from denying liability for the fair market value of the equipment held aside in anticipation of contract award. On February 15, 1991, the Army issued a final decision denying plaintiff's bid protest. Two weeks later, Future Photo was awarded the contract. On January 2, 1992, defendant moved for summary judgment.[1]

1. On January 22, 1992, plaintiff was allowed to file an amended complaint which no longer requested a writ of mandamus. Therefore, de-

## DISCUSSION

Summary judgment is appropriate when "there is no genuine issue as to any material fact" so that the moving party "is entitled to judgment as a matter of law." RUSCC 56(c) (1991). In evaluating a motion for summary judgment, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); *Campbell v. United States*, 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Chevron U.S.A., Inc. v. United States*, 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds*, 923 F.2d 830 (Fed. Cir.1991).

When the moving party has carried its burden, the non-moving party must come forward with specific facts showing that a genuine issue for trial exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and the non-moving party may not discharge its burden by cryptic, conclusory, or generalized responses. *See Willetts v. Ford Motor Co.*, 583 F.2d 852, 856 (6th Cir.1978); *Tunnell v. Wiley*, 514 F.2d 971, 976 (3d Cir.1975). "[When] the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)). The court finds that no genuine issues of material fact are present, and that summary judgment is appropriate.

## I. The Consideration of Skytech's Bid.

Plaintiff's first argued that the Army did not give fair consideration to its bid. Generally, the government is under a duty to consider all bids for government

fendant's motion to dismiss, which was directed to the mandamus request, is moot and need not be addressed by the court.

contracts fairly and honestly. *Heyer Prods. Co. v. United States*, 135 Ct.Cl. 63, 140 F.Supp. 409 (1956); *Keco Indus., Inc. v. United States*, 192 Ct.Cl. 773, 428 F.2d 1233 (1970). To show a violation of this duty, a contractor must prove that the government awarded a contract arbitrarily or capriciously. *Excavation Constr. v. United States*, 204 Ct.Cl. 299, 494 F.2d 1289 (1974). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Here, plaintiff alleged that defendant acted arbitrarily and capriciously by awarding a contract to a bidder who was not responsible and whose bid was nonresponsive.

■ A bid is responsive if its price, quality, quantity and delivery conform to the government's solicitation requirements. *Blount, Inc. v. United States*, 22 Cl.Ct. 221, 226 (1990) (citing *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277 (1983)). Bid responsiveness is determined at the time bidding is opened, and bids containing material nonconformities must be rejected. *Bean Dredging Corp. v. United States*, 22 Cl.Ct. 519 (1991). Plaintiff asserted that Future Photo's bid was nonresponsive because it contained errors in calculation, it was not signed on every page, and it did not contain Future Photo's corporate seal next to the signature of its corporate secretary. However, none of these irregularities can be considered material defects in the bid. In *Grade–Way Constr. v. United States*, 7 Cl.Ct. 263 (1985), the court stated that when defects in the bid are trivial, "or a matter of mere formality, the law does not require that the entire bid be rejected." *Id.* at 265. Moreover, the responsiveness of a bid is not affected by the bidder's failure to affix its corporate seal to the bid. *Noslot Pest Control*, 89–1 C.P.D. ¶ 396 (April 20, 1989). Future Photo's failure to observe the punctilios of the solicitation did not render its bid nonresponsive.

■ Plaintiff also alleged that the Army violated statutory law by pointing out apparent errors in Future Photo's bid, thereby allowing Future Photo to lower its bid. However, the communications between defendant and Future Photo were merely "conducted for the purpose of minor clarification," as contemplated in the statute. 41 U.S.C. § 253b(d)(3) (1988). Future Photo had already been determined to be the low responsive bidder and changes resulting from the clarification requests were minor. Defendant did not violate the statute.

■ Further, plaintiff argued that Future Photo was not a responsible bidder because Future Photo had been delinquent on loan payments, was overdrawn at its bank, and did not own a camera or aircraft. The court finds plaintiff's argument unpersuasive. Responsibility is concerned with "how a bidder will accomplish conformance with the material provisions of the contract," *see Blount, Inc. v. United States*, 22 Cl.Ct. 221, 227 (1990), and a bidder may present evidence of responsibility at any time before contract award. *Bean Dredging*, 22 Cl.Ct. at 522–23. Neither the contract nor the solicitation required the bidder to own the equipment to be used in performing the contract; the bidder only needed to have access to the requisite equipment. The Army conducted a thorough preaward survey to determine Future Photo's responsibility, and reasonably concluded that Future Photo had adequate financial and material resources to perform the contract. The court cannot agree that the award of the contract to Future Photo was made arbitrarily or capriciously.

II. The Implied Contract Argument.

■ Next, plaintiff argued that an implied contract between defendant and plaintiff arose when defendant requested plaintiff to extend its bid for sixty days. Implied-in-fact contracts require the same mutuality of intent, offer and acceptance, and showing that the agent whose conduct is relied upon had actual authority to bind the government as do express contracts. *Orchards v. United States*, 749 F.2d 1571, 1575 (Fed.Cir.1984), *cert. denied*, 474 U.S.

818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985); *Russell Corp. v. United States,* 210 Ct.Cl. 596, 537 F.2d 474, 481–82 (Ct.Cl.1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977); *Sperry Corp. v. United States,* 13 Cl.Ct. 453, 458–59 (1987). Plaintiff would have the court believe that a contract between itself and defendant arose whereby defendant's request that plaintiff extend its bid mutated into an offer to pay plaintiff for the costs associated with extending the bid—a leap in logic the court is not willing to make. When plaintiff made its protest, defendant was required by statute to allow all bidders the opportunity to extend their existing bids. FAR 14.414–1(d). Plaintiff argued that consideration was present when it "promised to hold sophisticated aircraft and aerial cameras, film developing facilities, and personnel available to perform a potential contract that required performance on two days' notice" and when the government promised in turn the "possible award of the contract." Such a promise by the government was clearly illusory; mutuality of intent and consideration were never present. In responding to the Army's request, plaintiff had two choices: it could extend its bid or withdraw from the bidding process. The bid extension was simply a part of the solicitation process and no compensation for bid-extension costs will be granted unless defendant acted arbitrarily or capriciously. *Cf. Keco,* 428 F.2d at 1240. Here, defendant's award of the contract to Future Photo was made in a rational manner.

### III. Estoppel.

■ Finally, plaintiff argued that defendant should be estopped from denying liability for the fair market value of plaintiff's services during the period when plaintiff held its equipment ready in anticipation of contract award since defendant requested the bid extensions. However, the law is well settled, and this court recently has made clear, that equitable estoppel cannot lie against the government for a monetary claim unless Congress has specifically authorized it. *Burnside–Ott Aviation Training Ctr., Inc. v. United States,* 24 Cl.Ct. 553, 563–64 (1991); *see Office of Per-*

*sonnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *Springer v. Office of Personnel Management,* 911 F.2d 675, 676 (Fed.Cir. 1990); *Dun & Bradstreet Corp. Found. v. United States Postal Serv.,* 946 F.2d 189, 195 (2d Cir.1991); Accordingly, plaintiff's estoppel argument has no merit.

### CONCLUSION

Following a careful examination of defendant's motion, and giving the proper presumptions and preferences required by the law of summary judgment, the court finds that this case does not present genuine issues of material fact to be tried. Defendant's motion for summary judgment is granted. The Clerk of the court is directed to dismiss the complaint. Costs to defendant.

IT IS SO ORDERED.