**FORESTRY SURVEYS AND
DATA, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 98–844C.

United States Court of Federal Claims.

Aug. 12, 1999.

Howell Roger Riggs, Hunstville, Alabama, attorney of record, for Plaintiff.

Monica J. Palko, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for Defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

With the remaining issues in this post-award bid protest case, plaintiff, Forestry Surveys and Data (FSD), seeks to recover bid preparation costs, other costs, and attorneys' fees. FSD alleges that its proposal, submitted in response to a solicitation for a tree stand exam in a National Forest, was improperly evaluated by the Forest Service. Both parties move, here and now, for summary judgment.

### FACTS

On June 23, 1998, the Forest Service issued a request for quotations soliciting proposals to perform a "timber stand exam" in the Boise National Forest. A timber stand exam, in laymen's terms, is a survey of the trees within a bounded area, describing the species of each tree within the survey boundaries and its condition. The solicitation used three evaluation factors—experience, past

performance, and price. App. at 42.[1] Under the "Experience" evaluation factor were the following two subfactors: "experience with stand exams" and "experience and knowledge, tree species identification, plant identification, tree disease and damage identification, mapping, and photo identification." Two subfactors for the "Past Performance" evaluation factor were listed as "quality of work" and "timeliness of work." App. at 42. Award was to be made to the offeror whose "anticipated capability/price relationship provides the best overall value to the Government." *Id.* A critical factor in award was "what the anticipated capability should mean in terms of higher quality of work performance and reduced risk of performance failure as opposed to the cost." *Id.*

Evaluation of the solicitation was to proceed under the Federal Acquisition Regulations' (FAR) simplified acquisition procedures, as set forth in Part 13. App. at 4; Def.'s Prop. Finding Uncontroverted Fact ¶ 4; Pl.'s Mot. Sure. J. at 4. Three businesses submitted offers: Rye Tree Services, Steve Holmes Forestry (Holmes)—the ultimate awardee of the contract—and the plaintiff, Forestry Surveys and Data (FSD). App. at 60, 64. By August 24, 1998, the entire contract had been awarded to Holmes. Documentation from the Forest Service indicates that the evaluators scored the three offerors on the non-price evaluation factors and subfactors. App. at 64. The five possible scores, from highest to lowest, were Outstanding, Excellent, Good, Fair, and Poor. *Id.* Under the "experience and knowledge" subfactor, Holmes received an Outstanding score, while FSD received a Good score. *Id.* A footnote by the evaluators indicates that Holmes received a high score because one of their representatives had a master's degree in forestry. App. at 64. Under the past performance quality of work subfactor, Holmes also received a higher rating (Excellent) while FSD received a Poor rating. *Id.* Documentation that is contemporaneous with

the evaluation reveals that the evaluators received a negative report from a Forest Service contracting officer who had worked with FSD in a prior contract for the Forest Service. App. at 62. Affidavits submitted by the government state that this prior contract (performed in 1997) was identical—the same work in the same area—to the proposed work in the subject solicitation. Decl. Stanley Bird ¶ 5; see also Decl. Melinda Draper ¶ 2. Holmes' price for the total contract was $91,205, while FSD's price for the total contract was $79,302. App. at 60.

On November 2, 1998, approximately two months after award of the contract, FSD filed a petition in this court challenging the award. In its complaint, FSD alleged that the Forest Service had improperly evaluated the offers by using education as a criterion, when education had not been listed as an evaluation factor. Ver. Pet. ¶ 11. Secondly, FSD alleged that the agency also improperly evaluated FSD's past performance because the Forest Service (i) focused on only one of five contracts listed by FSD as references, (ii) failed to give FSD an opportunity to comment on derogatory information that was being considered by the agency, while giving such opportunity to Holmes, and (iii) was biased against FSD. Am. Ver. Pet. ¶ J 15–17. As relief, FSD sought preliminary and permanent injunctions ordering the government to terminate the presently-awarded contract, to direct the award of the contract to itself, to stop using "derogatory" past performance information in evaluating the present contract, and to stop using "derogatory" past performance information in "any other contract outside the subject agency." Ver. Pet ¶ 18.

After subsequent motions and an opinion, previously issued, from this court, FSD's request for relief has now been narrowed to a request for bid preparation costs and attorneys' fees and costs.[2] Both parties now

1. All references to "App." shall refer to the appendix attached to Defendant's Motion for Summary Judgment.

2. For a complete procedural history of this case, see our opinion in *Forestry Surveys and Data v. United States,* 44 Fed.Cl. 485 (1999). In this

prior opinion, we considered FSD's motion to dismiss, *without prejudice,* its request for an injunction barring use of the negative evaluation of past performance and its motion to strike an affidavit of the contracting officer proffered by the government. These motions were both denied. Additionally, we considered the govern-

seek summary judgment in their respective favor on the said remaining claims presented in FSD's complaint. FSD's grounds for said relief are that its bid was not treated fairly because (i) education is not identified as an evaluation factor; (ii) the evaluation of offerors was not conducted impartially because Holmes was allowed to comment on negative past performance while FSD was denied this opportunity; (iii) the Forest Service failed to look at four contracts with "good" performance out of the five contracts listed as references by FSD; (iv) the evaluators marked through their original scores, thereby changing them, which evinced a manipulation of the results to arrive at a preconceived selection; and (v) the contracting officer failed to document the trade-off between a high price and a high score on the non-price evaluation factors. Pl.'s Mot. Summ. J. at 4–8. Thus, on said grounds, FSD contends that it is entitled to such fees and costs. The government, on the other hand, in its motion for summary judgment, argues that FSD has failed to prove that it is entitled, under any of its grounds of contention, to bid preparation costs. Def.'s Mot. Summ. J. at 2. We will discuss each of FSD's arguments in turn.

## DISCUSSION

### A. BACKGROUND

■ Actions brought before this court under our bid protest jurisdiction must be reviewed under the standards prescribed by the Administrative Procedure Act (APA) set forth in 5 U.S.C. § 706. See 28 U.S.C. § 1491(b)(4); *Cubic Applications, Inc. v. United States,* 37 Fed.Cl. 339, 341 (1997). Accordingly, in determining whether a claimant is entitled to bid preparation costs, the controlling standard is whether the government acted in an arbitrary and capricious manner. *Southfork Sys. v. United States,* 141 F.3d 1124, 1132 (Fed.Cir.1998); *Keco Indus. v. United States,* 203 Ct.Cl. 566, 492

F.2d 1200, 1203 (1974). In *Keco,* the Court of Claims set out four factors that are generally relevant to the issue of whether a governmental agency's action was arbitrary and capricious, *i.e.,* (i) subjective bad faith on the part of the procuring officials depriving a bidder of the fair and honest consideration of his proposal; (ii) proof that there was "no reasonable basis" for the administrative decision; (iii) the degree of proof of error necessary for recovery is ordinarily related to the amount of discretion entrusted to the procurement officials by applicable statutes and regulations; and (iv) a proven violation of pertinent statutes or regulations can, but need not necessarily, be a ground for recovery. *Id.* at 1203–04. Finally, as noted in *Keco,* the application of these four general principles may well depend on the type of error or dereliction committed by the government, and whether the error or dereliction occurred with respect to the claimant's own bid or that of a competitor. *Id.* at 1204. The government's firm duty to treat a bid fairly and honestly runs first to the enterprise submitting the bid; however, an agency may owe a lesser duty to a bidder to properly read and evaluate his competitor's bid in certain situations. *Id.*

■ A court's review of agency action is, as a general rule, limited to the administrative record. *Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973).[3] Where an agency's decision is found to be reasonable, however, a "court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Put differently, "[a] court has no warrant to set aside agency action as arbitrary or capricious when those words mean no more than that the judges would have handled the matter differently had they been agency members." *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1299 (D.C.Cir.1971); *Widnall v. B3H Corp.,* 75 F.3d 1577, 1579 (Fed.Cir.1996). More-

ment's motion to dismiss FSD's request for an injunction barring the Forest Service from using past performance information in the protested contract and in any future contracts. The government's motion to dismiss was granted.

3. However, in limited circumstances, a court may consider "extra-record" evidence. *See Cubic,* 37 Fed.Cl. at 342 (citing *Esch v. Yeutter,* 876 F.2d 976 (D.C.Cir.1989)).

over, it is well-settled that *procurement* officials are entitled to broad discretion in the evaluation of offers and in the application of the procurement regulations. *TRW Envtl. Safety Sys., Inc. v. United States,* 18 Cl.Ct. 33, 43 (1989). Consequently, to establish arbitrary and capricious conduct, in a bid protest action, the plaintiff bears a heavy burden of showing, by clear and convincing evidence, a significant, prejudicial error in the procurement process. *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1581 (Fed.Cir.1996); *Data Gen. Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996). To establish a prejudicial error, a protestor must show that there was a "substantial chance that it would have received the contract award but for that error." *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (quoting *Statistica,* 102 F.3d at 1582).

B. THE "EXPERIENCE" EVALUATION FACTOR (SUBFACTOR EXPERIENCE AND KNOWLEDGE)

As its first ground for relief, FSD alleges that the Forest Service improperly considered the *education level* of the bidders' representatives when education was not a criterion identified in the solicitation. FSD alleged that it was prejudiced by this improper evaluation because the successful offeror's representative had a master's degree in forestry, that was considered, while FSD's representative had no advanced degree. The government, in response, argues that the solicitation's "Experience" evaluation factor encompasses education when it lists as an experience subfactor "experience and knowledge." (Def.'s Mot. Summ. J. App. at 42). Knowledge, the government contends, is commonly understood to be obtained through study, including formal education. (Def.'s Mot. Summ. J. at 5). We agree.

▮ When weighing the merits of a proposal under a specific evaluation factor, an agency "may consider all matters that offerors would reasonably have believed to be within the scope of the factor." John

Cibinic Jr. & Ralph C. Nash Jr., Formation of Government Contracts 830 (3rd ed. 1998) (citing to *Bank Street College of Educ.,* 63 Comp. Gen. 393, 400 (B-213209)).[4] A straightforward reading of the solicitation shows that a subfactor of the "experience" evaluation factor is "experience *and knowledge* " of offerors, specifically knowledge of "tree species identification, plant identification, tree disease and damage identification, mapping, and photo identification." Pet. at 3. A common understanding of knowledge is that it can be attained through study or experience. Although it is reasonable to infer that knowledge of tree identification, etc., can be obtained by experience, it is also a reasonable inference that a master's degree in forestry would also equate with knowledge in the areas identified in the solicitation. The dictionary meaning of "knowledge" only corroborates the common meaning of knowledge. Webster's Dictionary defines knowledge as "[f]amiliarity, awareness, or comprehension acquired by experience or study" and "[t]he sum or range of what has been perceived, discovered, or learned." *Webster's II New College Dictionary* 610 (1995). Any reasonable offeror would, on this record, assume that it was entitled to prove the requisite knowledge through education or experience. It cannot, therefore, come as a surprise to any offeror that education in forestry was taken into consideration in evaluating the experience of offerors, given that experience was also defined as knowledge. Therefore, FSD's contention that the Forest Service improperly evaluated the "experience" factor by giving more credit to a competitor who offered a project leader with a master's degree in forestry is totally meritless.

For the foregoing reasons, FSD's allegation that the Forest Service improperly evaluated the experience factor of the solicitation is void of merit, and its motion for summary judgment, on this basis, is denied.

C. THE "PAST PERFORMANCE" EVALUATION FACTOR

FSD's second ground of contention, alleging improper evaluation of the past perfor-

---

4. Although decisions of the GAO are not binding on this court, they can be used for guidance when they are found to be reasonable and per-

suasive. *CACI Field Servs. v. United States,* 13 Cl.Ct. 718, 731 n. 28 (1987), *aff'd,* 854 F.2d 464 (Fed.Cir.1988).

mance factor, also fails. In asserting that the Forest Service improperly evaluated FSD's past performance, FSD makes three arguments.

■ First, FSD contends that while the evaluators granted to Holmes two opportunities to discuss its past performance problems, no such discussions took place with FSD concerning the allegations against it of poor performance. Pl.'s Mot. Summ. J. at 6. Because the government opened discussions with one offeror regarding past performance, FSD argues that the government was obliged to open discussions regarding past performance with all offerors. *Id.* FSD's motion for summary judgment cites to two exchanges with Holmes. In the first exchange with Holmes, evaluators "discussed a past performance problem with Gerald Foster, and accepted his explanation without any indication of confirmation from the procuring agency." Pl.'s Mot. Summ. J. at 6. As to the second exchange with Holmes, the complaint alleges that the Forest Service called Steve Holmes, himself, and asked him about timeliness problems on the same contract discussed with Gerald Foster. Am. Pet. ¶ 6.

FSD's argument is without merit. First, FSD has its facts wrong. Gerald Foster was a contracting officer with the *Forest Service* and had prior experience with Holmes on another contract. Draper Affid. ¶ 3. Because the discussion was with a Forest Service employee and not with Holmes, FSD cannot complain about an improper discussion with Holmes. The second complained-of discussion, on the other hand, was with Steve Holmes, and, therefore, does constitute an exchange with another offeror. For the reasons below, however, we find that this discussion was simply for clarification purposes and that similar clarifications were sought from all the offerors as needed by the Forest Service.

The FAR, in Part 15, allows for "clarifications" with offerors, which it describes as a "limited exchange" made when award *without discussions* is contemplated, in which offerors are "given the opportunity to clarify certain aspects of proposals (*e.g.,* the relevance of an offeror's past performance information and adverse past performance

information to which the offeror has not previously had an opportunity to respond) or to resolve minor or clerical errors." 48 C.F.R. § 15.306(a)(1)–(2). Documents contemporaneous with the award decision indicate that the purpose of the talks between the Forest Service and Holmes was to inquire whether Holmes had the capacity to perform the entire contract, as well as to raise a timeliness problem in a prior contract with the Forest Service. Pl.'s Mot. Summ. J. App. at 62. The alleged timeliness problem had just come to the Forest Service's attention after talking to Gerald Foster, the contracting officer on the prior contract. *Id.* Holmes gave a reasonable explanation to the timeliness issue raised. *Id.* To this court, the government sought, in this exchange, a clarification from Holmes regarding its ability to perform the entire contract and Holmes' response to the recently raised issue of timeliness, to which Holmes had not yet responded. Similarly, the Forest Service sought clarification from a third offeror, Rye Tree, regarding its capacity to perform the entire contract. *Id.* at 67. Finally, a clarification was also sought of FSD regarding who would be the contract representative from FSD should it get the award. *Id.* at 63. The documentation indicates that the Forest Service left a message with FSD and that FSD in turn left a message with the Forest Service naming the contract representative. *Id.*

It is true that the Forest Service, in its call for clarification, did not ask FSD to respond to the adverse past performance information on the prior contract listed by FSD in its reference. But the Forest Service was not required to seek a response from FSD for several reasons. First, FSD volunteered several explanations for its quality problems when it submitted its offer. *Id.* at 54. In its explanation, it referred the Forest Service to the Forest Service's own files: "The history of this problem contract is on file at the SW Idaho/Nevada Acquisition Office." *Id.* at 54. FSD can hardly complain when the Forest Service does in fact refer and rely on its own contracting officer for a history of the problem contract. Second, the simplified procedures allow the eval-

uation of past performance to be based on "the contracting officer's knowledge of and previous experience with the supply or service being acquired...." 48 C.F.R. § 13.106–2(b)(2)(ii). Thus, the Forest Service not only had its own knowledge regarding the history of the prior contract, it also had FSD's response to the problems in its files. There was simply no need to seek redundant clarification from FSD regarding the adverse past performance. On the record presented here, it is evident that the Forest Service sought clarifications evenhandedly from several offerors only when it lacked information to fully evaluate the offers, as it was allowed to do under the FAR. Therefore, we hold that there is nothing in the record that can be construed as an unfair discussion with one offeror to the detriment of other offerors.

FSD's second argument regarding improper evaluation of past performance is that the evaluators failed to consider its good performance on four other contracts identified as references in its offer. FSD argues that all of the referenced contracts should have been weighed equally when evaluating past performance, and since it performed well on the other four contracts—indicating "an 80% success rate"—FSD should have been rated Excellent for past performance quality of work, the second highest score it could have received, rather than the Poor rating that it did receive. Pl.'s Mot. Summ. J. at 7; see Pl.'s Mot. Summ. J. App. at 64.

 This argument is also meritless on its face. We note, first, that the solicitation did not require the Forest Service to weigh all prior contracts equally when considering an offeror's past performance. Pl.'s Mot. Summ. J. App. at 42. Additionally, under bid protest case law developed in the GAO, agency evaluation personnel are given great discretion in determining the scope of an evaluation factor. See Cibinic & Nash, *supra,* at 830, and the cases cited therein. Thus, an agency, in evaluating past performance, can give more weight to one contract over another if it is more relevant to an offeror's future performance on the solicited contract. *Id.* In the case at bar, the prior contract considered by evaluators for the

past performance evaluation was an identical contract for the prior year. S. Bird Decl. ¶ 7. Thus it is reasonable to assume that the requirements for the prior contract closely paralleled the requirements for the protested contract, and FSD's quality of performance on the prior contract would be indicative of its potential quality of work for the protested contract. It is not only eminently reasonable, but is also within the sound discretion of the evaluators to weigh this contract more heavily in its evaluation than the other contracts listed by FSD. See A WD Technologies, Comp. Gen. Dec. B–250081.2, 93–1 CPD ¶ 83 (finding that the "past project experience" evaluation factor "clearly put offerors on notice that the agency intended to consider factors—such as the degree of relevance and similarity in the projects—that would demonstrate the offeror's understanding of and ability to perform the current requirement.").

As an aside, we note that even had the evaluators given the other four contracts equal weight with the one prior identical contract, this court is not at all certain that FSD would have received an "Excellent" quality of work rating for its past performance. During the performance of two of the other four contracts listed, FSD received notices of noncompliance. Pl.'s Mot. Summ. J. App. at 53–54. Thus, out of five contracts listed, FSD received notices of non-compliance in three of them. Assuming, for the sake of argument, that the evaluators should weigh each contract equally, a history of 40% success rate in performing contracts would warrant a "Fair" rating for quality of work, the second lowest rating out of five possible ratings. This rating would still put FSD at a significant disadvantage for quality of work in past performance because the other offerors received "Excellent" ratings for quality of work, the second highest possible score.

 Lastly, FSD argues that because the scoring sheet used by the evaluators has mark-throughs—changes in the scores of the offerors—the results were manipulated to arrive at a preconceived selection. Pl.'s Mot. Summ. J. at 7. This argument is quickly dismissed as pure rank speculation. First, no inference can be drawn from the mere

fact that the evaluators changed their scores—other than the obvious inference that the evaluators changed their minds. FSD presents absolutely no other evidence that the evaluators desired a particular result from the evaluation. Moreover, it is presumed that procurement officials perform their duties in good faith, and we presume so here. *Knotts v. United States*, 128 Ct.Cl. 489, 121 F.Supp. 630, 631 (1954) (requiring "well-nigh irrefragable proof" to induce the court to abandon the presumption of good faith dealing by government officials). Thus, there can be no reason to infer that when the evaluators changed the scores of the offerors, they did so to achieve a desired result. Second, the mark-throughs themselves are ambiguous as to what result the evaluators hoped to reach, assuming the scores were changed to achieve a preconceived result. See Pl.'s Mot. Summ. J. App. at 64. The scores of all three offerors were changed. Holmes was upgraded on two scores. *Id.* Rye Tree, a third offeror who was initially the offeror to receive award of the contract before it withdrew its offer, was downgraded on one score and upgraded on another. *Id.* And FSD was upgraded on one score by two levels, from Good (a middle ranking) to Outstanding (the highest ranking). *Id.* None of FSD's scores were downgraded through subsequent changes. *Id.* Thus, the scores before the mark-throughs were made would have left FSD further behind the other two offerors than after the mark-throughs. We therefore cannot conclude that the mark-throughs were made with an intent to harm FSD.

For all of the reasons enunciated above, FSD's allegation that the Forest Service improperly evaluated the past performance factor of the solicitation is meritless, and its motion for summary judgment on this basis is denied.

### D. THE TRADE–OFF BETWEEN PRICE AND TECHNICAL SCORE

FSD's final ground of contention is that the Forest Service failed to document any technical trade-offs to justify the selection of a higher-priced but higher-scored offer over FSD's lower-priced but lower-scored offer.

FSD states that no memorandum contemporaneous with the award decision discusses the reasons for selecting Holmes' higher-priced award. This argument also fails.

Under the simplified acquisition procedures, contracting officers are allowed great discretion in "fashioning suitable evaluation procedures." 48 C.F.R. § 13.106–2(b)(1). Additionally, contracting officers are directed as follows:

> If using price and other factors [for evaluation], ensure that quotations or offers can be evaluated in an efficient and minimally burdensome fashion. Formal evaluation plans and establishing a competitive range, conducting discussions, and scoring quotations or offers are not required. Contracting officers may conduct comparative evaluations of offers.

48 C.F.R. § 13.106–2(b)(2). Finally, the rules also instruct contracting officers to keep documentation to a minimum. 48 C.F.R. § 13.106–3(b)(3). The import of the rules for simplified acquisition procedures is, as the term "simplified" would suggest, to promote efficiency and economy in contracting while avoiding unnecessary burdens for agencies and contractors. 48 C.F.R. § 13.002. The FAR does require, however, that contracting officers, when making a simplified acquisition evaluation and decision, evaluate proposals "on the basis established in the solicitation." 48 C.F.R. § 13.106–2(a)(2). And contracting officers must support the award decision "if other than price-related factors were considered in selecting the supplier." 48 C.F.R. § 13.106–3(b)(3)(ii). Thus, when reviewing an agency's evaluation in a simplified acquisition, we must examine the record to determine whether the agency evaluated the proposal in accordance with the terms of the solicitation and whether the exercise of its discretion was reasonable. *Sawtooth Enterprises*, Comp. Gen. Dec. B–281218, 98–2 CPD ¶ 139 (Dec. 7, 1998).

The solicitation states that award will be made to the offeror whose "anticipated capability/price relationship provides the greatest overall value to the Government." App. at 42. This means that a determination will be made on a best value basis. The evaluators concluded that "based on the overall ratings

and considering price" Holmes was a better choice than FSD. *Id.* This decision was not only reasonable, but it was made after an evaluation that was consistent with the solicitation. First, as we have already discussed supra, the Forest Service's analysis of both the experience and past performance evaluation factors was in accordance with the requirements of the solicitation. Because we have already determined this issue, we next must decide whether the award was reasonable under a best value approach.

A critical factor in determining best value, according to the solicitation, is the *relationship* between price and the "higher quality of work performance and reduced risk of performance failure" rather than the lowness of price or the "degree of anticipated capability." App. at 42. To determine whether the best value decision was reasonable, this court must determine whether it was reasonable to conclude that Holmes offered higher .quality of work performance and reduced the risk of performance failure. The record before us properly supports the award to Holmes on these factors. Holmes received an Outstanding score, one level higher than FSD's Excellent score, for experience with stand exams. Experience with stand exams would indicate a higher quality of work performance. Similarly, for the experience and knowledge subfactor, Holmes received an Outstanding score, two levels higher than FSD's Good score. And for the past performance quality of work subfactor, Holmes received an Excellent score, *three levels* higher than FSD's Poor rating. App. at 64. For the fourth evaluation factor, past performance timeliness of work, Holmes received an Excellent (the second highest score) where FSD received an Outstanding (the highest score). App. at 64. It is reasonable to assume that Holmes' higher scores on the three evaluation factors would indicate a higher quality of work performance and reduced risk of performance failure. The price difference between Holmes' and FSD's proposal is $11,903 ($91,205—$79,302). App. at 60. An agency may select a more highly-scored proposal over one offering a lower price if it has been determined that the merits of the high-scoring proposal outweighs the price difference. Sawtooth,

supra (finding that selection of more highly-rated offeror justified the $17,322 price difference between the $59,200 and $76,522 quotations). The evaluators here made the determination that the higher scores of Holmes justified the $11,903 price difference here at bar. We find that determination to be clearly reasonable given the record before us.

Because we have rejected all of FSD's arguments in support of its request for bid preparation costs, its motion for summary judgment is denied.

### E. ATTORNEYS' FEES AND COSTS

In addition to bid preparation costs, FSD has asked for attorneys' fees and costs. Under the Equal Access to Justice Act (EAJA), a *prevailing party* may recover costs associated with litigation, 28 U.S.C. § 2412(a)(1), and attorneys' fees and expenses, 28 U.S.C. § 2412(d)(1)(A). A party has "prevailed" when he or she has obtained the relief requested, and when the lawsuit was a "necessary or substantial factor" in producing this result. 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* 3660.1 (3d ed. 1998). The Federal Circuit has held that a plaintiff is a "prevailing party," for purposes of the EAJA, when it " 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Austin v. Dept. of Commerce*, 742 F.2d 1417, 1419 (Fed.Cir.1984) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Neal & Co. v. United States*, 121 F.3d 683, 685 (Fed. Cir.1997). Because FSD has not obtained the relief it requests—bid preparation costs—nor succeeded in any significant issue in litigation nor achieved any of the benefits for which it brought suit, it is not a prevailing party. Therefore, its request for attorneys' fees and costs is denied.

### CONCLUSION

For all of the foregoing reasons, FSD's motion for summary judgment seeking bid preparation costs is DENIED, and the government's motion for summary judgment seeking denial of FSD's bid preparation costs

is GRANTED. Because FSD is not a prevailing party, it is not entitled to recover attorneys' fees and costs.

WHEREFORE, the Clerk shall enter judgment accordingly. No costs.

IT IS SO ORDERED.