**SEATTLE SECURITY SERVICES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–139C.

United States Court of Federal Claims.

Filed under seal: Dec. 9, 1999.

Published: Jan. 28, 2000 [1].

---

1. This opinion was issued under seal on December 9, 1999. The parties were given an opportunity to propose redactions; however, no such redactions were suggested and, therefore, the opinion is now published in original form.

Sam Z. Gdanski, with whom was Jeffrey I. Gdanski and Scott H. Gdanski, of Suffern, New York, for plaintiff.

R. Alan Miller, U.S. Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General David W. Ogden, for the defendant.

## OPINION

ALLEGRA, Judge.

This post-award bid protest action is before the court on the parties' cross-motions for judgment on the administrative record. At issue is whether defendant acted arbitrarily and capriciously, and contrary to law, in evaluating plaintiff's past performance for purposes of awarding the contract. After careful consideration of the briefs filed by the parties, the oral argument, and for the reasons discussed below, the court GRANTS plaintiff's motion for judgment on the administrative record and DENIES defendant's motion for judgment on the administrative record. The court further concludes that plaintiff is entitled to permanent injunctive relief as described below.

## I. Facts [2]

On March 2, 1998, defendant, through the General Services Administration (GSA), issued solicitation number GS–10P–98–LSD–0024 (the contract) for armed guard services at a number of federal office buildings and courthouses in the states of Washington and Oregon. The contract provided for a base period covering June 1, 1998, through May 31, 1999, with four option years. The solicitation covered security services for two areas: Area 1 was Washington and Area 2 was Oregon. Prior to this solicitation, security services for these two areas were provided under two separate contracts, one for Washington and one for Oregon. The plaintiff, Seattle Security Services, Inc., was the incumbent contractor on both of these contracts.

Pursuant to the solicitation, the evaluation factors for the award were price and past performance. Section M—Evaluation Factors for Award, states, in pertinent part:

The Government will make award to the responsible offeror whose offer conforms to the solicitation and is most advantageous to the Government, price and other factors specified herein considered. For this solicitation, the Government will consider the offeror's past performance record in providing similar services and the price. The past performance factor and price factor are approximately equal in terms of importance.

The Government will rank offerors from the lowest to the highest based on the total evaluated price submitted in response to this solicitation. The Government will then evaluate the past performance record of offerors beginning with the offeror submitting the lowest priced offer and moving to the second lowest, third lowest, etc. As soon as an offeror with a past performance record that is better than satisfactory is identified, the Government will make a de-

---

**2.** The facts upon which this opinion is based are drawn from the administrative record and the supplement ordered thereto; affidavits and declarations attached to the briefs filed with respect to the plaintiff's motion for injunctive relief; and the court's earlier opinion denying preliminary relief.

cision as to whether it is in its interest to make a trade-off between past performance and price. The Government may award the contract to an offeror with a higher price but a better past performance record. . . .

If an award is not made based on initial offers without discussion as is contemplated by this solicitation (see FAR 52.215–16 (Alt II)), the past performance record of all offerors included in the competitive range will be evaluated and considered. After receipt of best and final offers, the trade-offs, if any, between price and past performance will be made in selecting the successful offeror for award.

The focus of the dispute is the manner in which the contracting officer evaluated past performance information. Regarding this subject, Section L.12 of the solicitation, which sets forth the criteria for submission and evaluation of past performance information, states:

Each offeror will be evaluated on his/her performance under existing and prior contracts for similar products or services. To receive maximum consideration for award, offerors shall submit at least three contract references with whom you have had a continuous working relationship for not less than one year continuous service, within the last 5 years. The information can be provided by offerors on Figure L–1. The Government will focus on information that demonstrates quality of performance relative to the size and complexity of the procurement under consideration. The Government will contact individuals and firms for which you have performed services to evaluate your past performance record. To receive maximum consideration for award, each reference contacted must demonstrate responsiveness, no recurring deficiencies and follow-up on complaint calls.

Offerors should submit proposals that area [sic] acceptable without additional explanation or information. The Government may request additional information from offer-

ors of proposals, and may discuss proposals with their Offerors, however, award may be made without negotiation of proposals. References other than those identified by the offeror in Figure L–1 may be contacted by the Government with the information received used in the evaluation of the offeror's past performance. If an offeror has no record of relevant past performance, or information on past performance is not available, the offeror will not be evaluated favorably or unfavorably.

By March 31, 1998, defendant received initial proposals from seven offerors in response to the solicitation. The contracting officer (CO) reviewed and ranked the proposals received according to price. Gabriel Security Corporation (Gabriel) had the lowest offer and plaintiff had the next lowest offer ($4,273.00 more). On April 28, 1998, defendant was notified by the Department of Labor that all contracts effective June 1, 1998, had to include the increased employee health and welfare benefit wage of $1.39 per hour. That same day, the CO issued, by facsimile, an amendment to the solicitation, which required offerors to revise their final proposals to include the increased health and welfare benefit wage, and then to submit best and final offers (BAFOs) no later than 4:00 p.m. on April 29, 1998. Prior to sending each offeror the amendment by facsimile, the CO notified all seven offerors by phone of the amendment and the deadline for BAFOs. The CO received BAFOs from six offerors within the deadline. The BAFO from the seventh offeror was late and removed from consideration for the contract award.

As noted above, Section M provides that "[i]f an award is not made based on initial offers without discussion as is contemplated by this solicitation (see FAR 52.215–16 (Alt II)), the past performance record of all offerors included in the competitive range will be evaluated and considered." Since the CO did not make an award on initial proposals, she conducted a past performance review for each of the six remaining offers.[3] In accordance with Section L.12, each offeror had

---

**3.** The six offers were from plaintiff, Gabriel, Ausnet Security Intelligence, Inc. (Ausnet), Hayes Protective Services, Inc. (Hayes), Star Protective Service (Star), and Watson Agency, Inc. (Watson).

provided at least three contract references on Figure L–1 with its offer.[4] To evaluate past performance, the CO contacted contract references for each offeror and asked each reference the same five questions about that offeror's performance. The CO then noted the answers to those questions on a past performance evaluation form and assessed points for each answer. An offeror could receive a maximum total past performance score of 13 points for each contract reference evaluation.

The five questions employed on the evaluation form were as follows:

1. The first question was about the number of buildings or sites for which the offeror provided service on the prior contract. The CO compared the answer to the number of sites requiring service on the solicited contract, which was 28. If, for the reference, the number of buildings or sites equaled 28 or more, the offeror received one point; otherwise no points were awarded.

2. The second question was about the number of guard posts provided by the offeror on the prior contract. The CO compared the answer to the number of posts required on the solicited contract, which was 42. If the number of posts equaled 42 or more, the offeror received one point for that question; otherwise no points were awarded.

3. The third question asked the contract reference to rank the offeror's overall service on the prior contract. Answers were rated on a 5 point scale—ranging from a score of 5 points if there were no complaints or problems within a year, to 2 points if there were 6 or more complaints.

4. The fourth question asked the contract reference to rank the offeror's response time for emergency calls. Again a 5 point scale was employed—ranging from a score of 5 points if response times always were under 1 hour, to 2 points if response times were in excess of 3 hours.

5. The fifth and final question asked the contract reference if they would rehire the offeror. The offeror received 1 point if the answer was "yes," but lost a point if the answer was "no."

In evaluating past performance, the CO did not evaluate the same number of references for each offeror and did not always employ the evaluation form. With regard to four of the six offerors (Watson, Star, Ausnet and Hayes), the CO contacted one contract reference for each and filled out one evaluation form for each. The CO contacted two of the plaintiff's contract references and filled out two evaluation forms. One of these references was the CO on the Washington contract (Area 1 of the current solicitation). The other was not the Oregon contract (Area 2 of the current solicitation), which plaintiff had listed among its references, but rather a smaller-sized guard contract plaintiff had performed involving the Todd Pacific Shipyards in Seattle, Washington.[5] With regard to Gabriel, the CO contacted one of Gabriel's contract references, for which she filled out one evaluation form. The CO also considered three letters of recommendation that Gabriel had attached to its offer and contacted one of the authors of these letters by phone. However, the CO apparently did not fill out an evaluation form for any of these three recommendations.[6]

---

4. Three of the six offerors (plaintiff, Star and Watson) provided in their offers four contract references on Figure L–1. Hayes provided six contract references on Figure L–1. Ausnet provided four contract references on Figure L–1, but also included a list of fifteen contract references (which included the same four references on Figure L–1) with its offer. Gabriel provided four contract references on Figure L–1 and also attached numerous letters of recommendation to its offer.

5. In her declaration, the CO indicated that she did not evaluate the Oregon contract because she was the CO on that contract and feared that by taking her own evaluation into account she

would open the procurement up to claims of prejudice.

6. The record is unclear as to whether the CO, in setting Gabriel's past performance score, assigned a numerical value to these recommendations, but did not fill out the form, or simply assigned no numerical value to these recommendations. Notably, none of these letters contained all the information needed to score them on the evaluation sheets (e.g., response time on emergency calls), although the CO may have obtained that information as to the one reference that she called.

After completing the past performance evaluation, the six offerors were ranked for price and past performance as follows:

| Company | Price | Past Performance Score |
|---|---|---|
| Gabriel | $ 4,105,436.25 | 11 |
| Seattle | $ 4,109,709.25 | 10 [7] |
| Watson | $ 4,298,391.25 | 11 |
| Star | $ 4,650,452.00 | 12 |
| Ausnet | $ 4,847,297.50 | 9 |
| Hayes | $ 5,234,416.25 | 11 |

The CO determined that Gabriel should be awarded the contract based upon an analysis of price and past performance. In her declaration, the CO explained:

> Gabriel offered the lowest price and earned 11 points. Star earned 12 points, but its price was $545,016 higher than the price offered by Gabriel. I determined that the price difference between Star and Gabriel was too great to make a cost-technical trade-off and award to Star. Watson earned 11 points, the same as Gabriel, but its price was $192,955 higher than the price offered by Gabriel. I also determined the price difference between Watson and Gabriel was too great to make a trade-off and award to Watson.

With regard to her analysis of plaintiff's price and past performance, the CO explained:

> I did not award to Seattle Security because its price was $4,273 higher than the price offered by Gabriel and Seattle Security earned 1 point less than Gabriel. There was no basis to make a trade-off between Gabriel and Seattle.

On May 6, 1998, the GSA awarded the contract to Gabriel and notified all other offerors, including plaintiff, of the award by letter. Plaintiff submitted a protest of the award to the CO, who denied the protest by letter dated May 29, 1998. On June 4, 1998, plaintiff filed a protest with the General Accounting Office (GAO), which dismissed the

protest on June 17, 1998. Nine months later, on March 17, 1999, plaintiff filed suit in this court seeking injunctive and monetary relief. Prompted by questions raised by the court at a status conference on May 25, 1999, to discuss the issues in the case, plaintiff filed a motion for preliminary injunction on June 8, 1999. On August 10, 1999, oral argument was held on plaintiff's motion for preliminary injunction, defendant's motion to dismiss, and plaintiff's motion to supplement the administrative record. On September 10, 1999, this court denied plaintiff's motion for preliminary injunction, granted, in part, defendant's motion to dismiss, and granted, in part, plaintiff's motion to supplement the administrative record.[8] On November 30, 1999, oral argument was held on the parties' cross-motions for judgment on the administrative record.

## II. Discussion

### A. Standard of Review

■■■ As this court has frequently said, federal agencies generally are free to choose with whom they wish to contract and this court will interfere with the government procurement process "only in extremely limited circumstances." *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1581 (Fed.Cir. 1983) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed.Cir. 1983)). In a case filed post-award, this court will enjoin performance of the contract only where the agency's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) (1994). *See also* 28 U.S.C. § 1491(b)(4) (Supp. III 1997). Regarding this standard, which is drawn from the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–706 (1994), the Supreme Court has stated:

7. The CO assessed a score of "10" for each of plaintiff's two contract reference evaluations. These scores were averaged together to equal "10."

8. The court granted defendant's motion to dismiss with regard to plaintiff's claim for $3.1 million in lost profits. The court determined that in bid protest actions, it lacks jurisdiction to

> award monetary relief beyond bid preparation and proposal costs. With regard to plaintiff's motion to supplement the administrative record, the court allowed the record to be supplemented with the aforementioned declaration from the CO explaining the process by which plaintiff's offer was evaluated and responding to certain questions.

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (citations omitted). *See also Honeywell, Inc. v. United States,* 870 F.2d 644, 647 (Fed.Cir.1989); *Blount, Inc. v. United States,* 22 Cl.Ct. 221, 227 (1990).[9]

▆▆▆▆ It is the burden of the aggrieved bidder to demonstrate that there was no rational basis for the agency's decision or that the challenged agency decision involved a clear prejudicial violation of applicable statutes and regulations. *See Analytical & Research Tech., Inc. v. United States,* 39 Fed. Cl. 34, 42 (1997); *Aero Corp. v. United States,* 38 Fed.Cl. 739, 749 (1997). Further, "to prevail in a protest the protestor must show not only a significant error in the procurement process, but also that the error prejudiced it." *Data General Corp. v. Johnson,* 78 F.3d 1556, 1562 (Fed.Cir.1996). To demonstrate prejudice, "the protestor must show 'that there was a substantial chance it would have received the contract award but for that error.'" *Alfa Laval Separation, Inc. v. United States,* 175 F.3d 1365, 1367 (Fed.Cir.1999) (quoting *Statistica, Inc. v. Christopher,* 102 F.3d 1577, 1582 (Fed.Cir. 1996)). Finally, because injunctive relief is so drastic in nature, the plaintiff must demonstrate its right to injunctive relief by "clear and convincing evidence." *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991).

Motions for judgment on the administrative record are treated in accordance with the rules governing motions for summary judgment. RCFC 56.1; *ECDC Envtl., L.C. v. United States,* 40 Fed.Cl. 236, 240 (1998). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A motion for summary judgment on the administrative record is often an appropriate vehicle to scrutinize an agency's procurement actions because the issues in such cases typically involve contractual and regulatory interpretation, thereby presenting no genuine issues of material fact. *See Analytical & Research Tech., Inc.,* 39 Fed.Cl. at 43.

## B. Were the Actions of the Contracting Officer Arbitrary and Capricious?

In contracts exceeding $1,000,000, contracting agencies are required to consider past performance information concerning an offeror as a mandatory comparative evaluation factor for award. *See* Federal Acquisition Regulations (FAR), 48 C.F.R. § 15.304(c)(2) (1997). In the case sub judice, this requirement was plainly reflected in the solicitation, which indicated that "[f]or this solicitation, the Government will consider the offeror's past performance record in providing similar services. . . ." The plaintiff asserts that the CO acted arbitrarily and unreasonably in evaluating its past performance. In particular, it argues that the CO: (i) failed to evaluate properly its performance as the incumbent on the Washington and Oregon contracts, which were being combined in the instant procurement; and (ii) rated its two references using the evaluation sheet, while not employing that same sheet in evaluating three references provided by Gabriel. Plaintiff further argues that, but for these errors, it would have had a substantial chance of winning the instant procurement. The court will consider these claims seriatim.

---

9. By its very definition, this standard recognizes the possibility that there exists a zone of acceptable results in a particular case and requires only that the final decision reached by an agency be the result of a process which "consider[s] the relevant factors" and is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 105, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983).

### (1) Failure to Evaluate Past Performance of Incumbent

Plaintiff was the contractor on the Washington and Oregon contracts, which were combined in the solicitation in question. The CO evaluated plaintiff's performance on the Washington contract, but not the Oregon contract, even though plaintiff provided references for both in its offer. Plaintiff claims that the CO's failure to evaluate plaintiff's performance on the Oregon contract and to perform the evaluation by combining the Washington and Oregon contracts was arbitrary and capricious because evaluation of performance on those contracts combined would be the best indicator of performance on the solicited contract. Plaintiff argues that if the CO had evaluated the Washington and Oregon contracts on a combined basis, it would have received the highest past performance score among the offerors and thus, received the contract award.

■ Agency personnel are generally given great discretion in determining what references to review in evaluating past performance. "There is no requirement that all references listed in a proposal be checked." *See HLC Indus. Inc.*, B–274374, 96–2 CPD ¶ 214 at 7. *See also Black & Veatch Special Projects Corp.*, B–279492.2, 98–1 CPD ¶ 173; William W. Goodrich, Jr., *Past Performance as an Evaluation Factor in Public Contract Source Selection*, 47 Am. U.L.Rev. 1539, 1582 (1998). Moreover, an agency, in evaluating past performance, "can give more weight to one contract over another if it is more relevant to an offeror's future performance on the solicited contract." *Forestry Surveys and Data v. United States*, 44 Fed.Cl. 493, 499 (1999). *See also* John Cibinic, Jr. & Ralph C. Nash, Jr., *Formation of Government Contracts* 830 (3d ed.1998). But, bound by the arbitrary and capricious standard of review, the exercise of this discretion obviously must be reasonable—and here it was not.

■ In particular, by failing to consider the Oregon contract in combination with the Washington contract, the CO, under the evaluation system she employed, systematically prejudiced plaintiff in two distinct ways. First, in disregarding the Oregon contract, the CO ignored some of the most relevant past performance information of the plaintiff, that is, performance as the incumbent at the very Oregon facilities covered by the new contract. Second, by failing to consider the two contracts in combination, the CO necessarily cost the plaintiff two points on the evaluation form—one on each of the first two questions. Those questions awarded a point on the basis of whether the contract examined involved a similar number of buildings and guards as the projected contract. Not surprisingly, by examining only the Washington contract, and excluding the Oregon contract, the CO awarded plaintiff no points on these first two questions—this despite the fact that it was known that plaintiff was the incumbent on the two contracts that were being combined to produce the new contract.[10] This result is arbitrary and capricious as to the incumbent, particularly since the solicitation in question emphasizes that "[e]ach offeror will be evaluated on his/her performance under existing and prior contracts *for similar products or services.*" (Emphasis added).

In analogous circumstances, the GAO has concluded that agencies acted unreasonably in failing to consider the past performance of incumbents for similar or identical services covered by a solicitation. Thus, for example, in *SCIENTECH, Inc.*, B–277805.2, 98–1 CPD ¶ 33,[11] the Department of Energy excluded

---

**10.** The following hypothetical illustrates how the CO's approach necessarily would affect the incumbent on combined contracts: A contractor performs two security guard contracts—one involving 10 buildings and 50 guards and the other involving 40 buildings and 200 guards. The agency in question decides to combine these contracts in a new solicitation for 50 buildings and 250 guards. Using the evaluation form employed by the CO here, bidders would receive points for performance deriving from contracts that involved at least 50 buildings and 250 guards. However, if the CO evaluated the prior contracts separately, or, as here, evaluated only one of those contracts, the scoring system necessarily would downgrade the incumbent's performance even though that performance, when combined, corresponded to the same number of buildings and guard posts (indeed, the *same* buildings and guard posts) as the solicitation.

**11.** Although decisions of the GAO are not binding on this court, they can be used for guidance when they are found to be reasonable and per-

the protester from the competitive range after checking four of the ten references provided. The agency, however, declined to consider the protester's performance as an incumbent contractor for the same services being solicited. While recognizing that there is no requirement that all references be checked as part of the evaluation process, the GAO, nonetheless, concluded that "some information is simply too close at hand to require offerors to shoulder the inequities that spring from an agency's failure to obtain and consider the information." *Id.* at 3. The GAO thus found it was unreasonable for the agency to fail to consider the protester's performance on the incumbent contract. This case, as well as many others, amply illustrate that a CO may not disregard the past performance of an incumbent on the very contract to be resolicited.[12]

In her declaration, the CO gave two reasons why she did not combine the plaintiff's performance on the two prior contracts for evaluation purposes and why she did not evaluate the Oregon contract. First, she noted that the solicitation, Section L.12, did not state that the CO could combine listed references for purposes of evaluation and asserted that, if she had done so, it would have been preferential treatment. But, rating an incumbent on combined contracts where the solicitation involves that combination would not appear to be prejudicial—and there is nothing in the solicitation here that suggests to the contrary. Indeed, the GAO has found that, where circumstances warrant, prior individual contracts may be considered together in evaluating past performance. *See Acepex Management Corp.*, B–279173.5, 98–2 CPD ¶ 128 (GAO found agency's act reasonable where agency combined three prior concurrently performed contracts of an offeror

and considered the "combined" contract similar in size, scope and complexity to the solicited contract for past performance evaluation purposes.). Moreover, if the CO believed she was precluded from combining the contracts, then she still should not have employed an evaluation method that inevitably downgraded the plaintiff's performance based on an arbitrary evaluation of the size of its prior contracts.

In her declaration, the CO also states that she did not review plaintiff's performance on the Oregon contract because she was the CO for that contract and was concerned that it would appear prejudicial if she evaluated plaintiff on that contract. But, it has been repeatedly held that it is proper for evaluators to use their personal knowledge of an offeror's performance of a contract with an agency. Thus, for example, in *Inlingua Schools of Languages*, B–229784, 88–1 CPD ¶ 340 at 3, the Comptroller General held that it was improper for an agency to refuse to evaluate an incumbent's performance in awarding a new contract for the identical services. In so finding, the Comptroller rejected the agency's claim that it would give the protestor an unfair advantage if the agency used its own evaluators as references, stating "[w]e have held that an agency may properly use the opinions of its own evaluators, as any other references, to aid in the evaluation of proposals." *Id.* at 3. It further found that "[w]e have long recognized that incumbent contractors with good performance records can offer real advantages to the government" and that "[a]n agency is not required to equalize competition with respect to these advantages so long as [they] do not result from a preference or unfair action by

suasive. *CACI Field Servs. v. United States,* 13 Cl.Ct. 718, 731 n. 28 (1987), *aff'd,* 854 F.2d 464 (Fed.Cir.1988). Such is the case here.

12. *See also International Business Systems, Inc.,* B–275554, 97–1 CPD ¶ 114 (unreasonable for agency to consider the performance of the incumbent on only one of two directly relevant prior contracts to install same type of telephone system); *Inlingua Schools of Languages,* B–229784, 88–1 CPD ¶ 340 (unreasonable for an agency, in evaluating past performance, to fail to evaluate the protestor's most relevant reference

listed in its proposal—its performance as the incumbent contractor on the solicited contract); *GTS Duratek, Inc.,* B–280511.2, B–280511.3, 98–2 CPD ¶ 130 (sustaining protest where agency ignored relevant information regarding protestor's performance on contract for similar services at the same shipyard, which information was personally known to one of the agency evaluators); Cibinic & Nash, *supra,* at 858; Goodrich, *supra,* at 1612–13; William T. Woods, *Past Performance; Rules Continue to Develop,* Procurement Lawyer 20 (1999).

the government." *Id.*[13] Indeed, were the CO's position on this issue accepted, an incumbent who performed outstandingly on an existing contract or contracts would be, notwithstanding, severely disadvantaged in winning a new contract for the same services if the only contracts or major contracts it had performed were the ones being resolicited.[14]

In short, the court concludes that the CO acted unreasonably in failing to combine the Washington and Oregon contracts for purposes of evaluating plaintiff's past performance. This information was simply too relevant and close at hand to ignore.

### (2) Failure to Employ Evaluation System Consistently

■ An agency has discretion to determine the scope of the offeror's performance history to be considered provided all proposals are evaluated consistently. *Pacific Ship Repair and Fabrication, Inc.*, B–279293, 98–2 CPD ¶ 29. In this regard, the GAO has aptly stated that "it is fundamental that the contracting agency must treat all offerors equally; it must evaluate offers evenhandedly against common requirements and evaluation criteria." *U.S. Property Management Serv. Corp.*, B–278727, 98–1 CPD ¶ 88 at 4. Similarly in *Wind Gap Knitwear, Inc.*, B–261045, 95–2 CPD ¶ 124 at 2, the GAO summarized the controlling legal standard, explaining "[w]here a solicitation requires the evaluation of offerors' past performance, an agency has discretion to determine the scope of the offerors' performance histories to be considered, provided all proposals are evaluated on the same basis and consistent with the solicitation requirements." *See also Tri-*

*fax Corp.*, B–279561, 98–2 CPD ¶ 1; *Tidewater Homes Realty, Inc.*, B–274689, 96–2 CPD ¶ 241; Goodrich, *supra*, at 1566–69.

The court's review of the record confirms that the CO did not evaluate the proposals of the plaintiff and the winning bidder, Gabriel, consistently in evaluating past performance. The CO evaluated one of the plaintiff's smaller contracts (i.e., not the Oregon contract) using the evaluation form and then averaged that result with the evaluation done on the Washington contract to develop a composite score of 10 for the plaintiff's performance. In her declaration, the CO indicated that in constructing Gabriel's past performance rating, she took into account three reference letters contained in Gabriel's offer. However, the CO apparently did not use the evaluation form in considering these references—no such forms are found in the record and key information is missing from the letters that would have been needed to fill out the forms. Moreover, had the CO employed the forms in rating these references, there are indications that the scores might have been lower than the 11 given to Gabriel on the one contract that was formally evaluated.[15] Thus, had the CO used the evaluation form to score the additional references she took into account in evaluating Gabriel's performance and then averaged those scores with Gabriel's other score, the result could well have been below 11.

■ The defendant argues, though, that we do not know what the scores would have been on these other references and that the scores might have been the same or even higher than the 11 Gabriel received. But, this assertion misses the point for while the

---

**13.** *See also Safeguard Maintenance Corp.*, B–260983.3, 96–2 CPD ¶ 116 at 7; *Omega World Travels, Inc.*, B–271262.2, 96–2 CPD ¶ 44; *HLC Indus. Inc.*, B–274374, 96–2 CPD ¶ 214; *Systems Integration & Dev., Inc.*, B–271050, 96–1 CPD ¶ 273.

**14.** At oral argument, defendant's counsel admitted that the agency would have made arrangements had the only contracts performed by plaintiff been those in which the CO was the same as the CO on the new procurement. In the court's view, it was unreasonable for the agency not to make similar arrangements in the instant case given the obvious prejudice to plaintiff of not evaluating the Oregon contract.

**15.** For example, one of the letters indicates that only one facility was involved—a situation that would have led to a mandatory loss of at least one, and likely two points, under the evaluation form, making it difficult for Gabriel to produce another score of 11 on this evaluation. And another of the recommendation letters indicates that Gabriel's performance was merely "satisfactory"—a recommendation that presumably would have garnered less than 5 points on the question that asked the reference to rate the contractor's overall performance.

CO clearly would have considerable discretion in evaluating Gabriel's performance on the evaluation forms, the CO does not have the discretion to employ a rigid point system for evaluating one bidder's references and not use the same system to evaluate another bidder's references. Moreover, the fact that the record fails to reflect what the CO actually did—whether she gave the additional references a score without using the form, used a form or failed to evaluate them at all—does not, as defendant claims, mean that this court must presume that the CO acted correctly. To the contrary, the basis for the CO's decision should appear in the record and, in the absence of such evidence, this court may not presume that the CO acted reasonably where there is substantial evidence that the CO acted inconsistently in evaluating the references in question. *See, e.g., Latecoere Int'l, Inc. v. U.S. Dept. of Navy,* 19 F.3d 1342, 1356 (11th Cir.1994) (to permit review, a contracting agency must provide "a coherent and reasonable explanation of its exercise of discretion"); *Mechanical Contractors, S.A.,* B–277916, 97–2 CPD ¶ 121 (protest sustained where past performance evaluation not adequately documented); *Ogden Support Services, Inc.,* B–270012.2, 96–1 CPR ¶ 177 (overturning unsupported past performance rating); *Goodrich, supra,* at 1604–11 (discussing additional cases).

■ Accordingly, the court concludes that the CO acted unreasonably in employing the evaluation forms as to plaintiff's references, but not employing the same forms in evaluating Gabriel's references.[16]

**16.** Plaintiff presents two other arguments in support of its motion for judgment. First, plaintiff claims that the CO misevaluated the information she received from plaintiff's contract reference for the Todd Pacific Shipyards contract by failing to give the proper amount of points for the reference's answer to one of the evaluation questions. There is, however, no evidence in the record that the CO improperly evaluated this contract reference. *See Forestry Surveys,* 44 Fed. Cl. at 497 ("[I]t is well-settled that procurement officials are entitled to broad discretion in the evaluation of offers and in the application of the procurement regulations."). Plaintiff further alleges that the contract award should be overturned because the CO improperly found plain-

### (3) Prejudice

■ To prevail in a bid protest, the protester must show not only a significant error in the procurement process, but also that the error prejudiced it. As noted above, to demonstrate prejudice, the protestor must show that "there was a substantial chance it would have received the contract award but for th[e] error." *Alfa Laval Separation, Inc.,* 175 F.3d at 1367. The Federal Circuit explained the underpinnings of this standard in *Data General Corp. v. Johnson,* 78 F.3d 1556 (Fed.Cir.1996). In that case, the court observed that:

> To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract. Such a rule would make it virtually impossible for a protester ever to prevail, no matter how egregious the error in the procurement process. On the other hand, a showing of a mere possibility that the protester would have received the contract but for the error is inadequate to show prejudice. If that were sufficient, the requirement of prejudice would be virtually eliminated. The proper standard lies between these polarities.

78 F.3d at 1562 (citations omitted). Reviewing various other verbal formulations of what is necessary to show prejudice, the court ultimately concluded that "[w]e think that the appropriate standard is that, to establish prejudice, a protester must show that, had it not been for the alleged error in the procurement process, there was a reasonable likelihood that the protester would have been awarded the contract." *Id.*[17]

tiff's bid unbalanced due to a failure to include overtime rates in its pricing. Plaintiff concludes that "the CO did not consider Seattle's proposal, because she determined it to be unbalanced." There is no evidence in the record that the CO failed to evaluate plaintiff's offer because of a failure to include overtime rates. The CO specifically stated that plaintiff did not receive the contract award because its price was higher than Gabriel's price and its past performance score was lower than Gabriel's score. Accordingly, neither of these arguments have merit.

**17.** The court further observed that this standard "reflects a reasonable balance between the importance of (1) averting unwarranted interrup-

On this record, plaintiff has shown that the errors committed by the CO prejudiced it because it has established that, without these errors, there was a substantial chance it would have been awarded the contract. Had the CO evaluated the Oregon contract in conjunction with the Washington contract, plaintiff would have received two additional points, giving it a potential score of 12 on that combined evaluation. Had that score been averaged with the 10 that the plaintiff received on its other reference, it would have had an average score of 11—the same as that received by Gabriel. In this situation, there is a reasonable likelihood that CO might have concluded that it was preferable to give the incumbent the contract, even though plaintiff's price was approximately $4,000 greater than Gabriel's price.[18] Such a trade-off would have been even more likely if the CO had formally evaluated Gabriel's other references and those evaluations had reduced Gabriel's score. Although it is far from certain that these various adjustments would have resulted in plaintiff receiving the contract, the standard for prejudice adopted by the Federal Circuit and this court does not require such certainty. Rather, under the "substantial chance" doctrine, it appears that plaintiff has demonstrated that it was prejudiced by the two errors identified.

## III. Injunctive Relief

■■■■ Having concluded that the instant procurement was legally flawed and that plaintiff was thereby prejudiced, the court must determine whether plaintiff has made three additional showings to warrant injunctive relief: (i) that it will suffer specific irreparable injury if the administration of the contract is not enjoined; (ii) that the harm to be suffered by it outweighs the harm to the government and third parties if the injunction were issued; and (iii) that granting the requested relief serves the public interest. *See ES–KO, Inc. v. United States,* 44 Fed.Cl.

429, 432 (1999); *Delbert Wheeler Constr., Inc. v. United States,* 39 Fed.Cl. 239, 251 (1997), *aff'd,* 155 F.3d 566 (Fed.Cir.1998). No one factor is dispositive to the court's inquiry as "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States,* 3 F.3d 424, 427 (Fed.Cir.1993). Plaintiff bears the burden of proving it is entitled to preliminary injunctive relief by clear and convincing evidence. *See Delbert Wheeler,* 39 Fed.Cl. at 251; *Bean Dredging Corp. v. United States,* 22 Cl.Ct. 519, 522 (1991). In the instant case, the existence of irreparable injury to plaintiff, the balancing of harms in favor of the plaintiff, and the public interest all lead this court to grant injunctive relief to plaintiff.

### A. Irreparable Injury

■■■■ When assessing irreparable injury, "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction." *Magellan Corp. v. United States,* 27 Fed.Cl. 446, 447 (1993). Plaintiff argues that it will suffer irreparable harm if an injunction is not granted, because the only other available relief—the potential for recovery of bid preparation costs—would not compensate it for its loss of valuable business on this contract. This type of loss, deriving from a lost opportunity to compete on a level playing field for a contract, has been found sufficient to prove irreparable harm. *See United Int'l Investigative Servs., Inc. v. United States,* 41 Fed. Cl. 312, 323 (1998) ("[T]he opportunity to compete for a contract and secure any resulting profit has been recognized to constitute significant harm."); *Magnavox Elec. Sys. Co. v. United States,* 26 Cl.Ct. 1373, 1379 (1992) (same); *Bean Dredging,* 22 Cl.Ct. at 524 (bidder would be irreparably harmed because it "could recover only bid preparation costs, not lost profits, through an action at law").[19]

tions of and interferences with the procurement process and (2) ensuring that protesters who have been adversely affected by allegedly significant error in the procurement process have a forum available to vent their grievances." 78 F.3d at 1563.

18. The solicitation in question explicitly authorized the CO to make such a trade-off. Moreover, the CO's declaration makes clear that she conducted such a trade-off analysis for several other bidders who had past performance scores equal to or higher than that of Gabriel.

19. Support also exists for the proposition that

Accordingly, plaintiff has adequately demonstrated that it will suffer irreparable harm if injunctive relief is not provided.

### B. Balance of Hardships

 Under this factor, the court must consider whether the balance of hardships leans in the plaintiff's favor. This requires a consideration of the harm to the government and to the incumbent on the current contract if an injunction is granted. The defendant, for its part, argues that immediately enjoining the performance of the contract would pose a security risk, potentially leaving inadequate guards at the federal facilities in question.

The particular problem faced by the defendant here—the need to maintain security for the buildings in question and to have adequate time to obtain and transition a replacement firm—can be addressed in the court's formulation of the appropriate injunctive remedy. Indeed, in *United Int'l Investigative Servs. Inc. v. United States, supra,* this court faced a very similar situation. That case involved a contract for security services for all judges, court personnel, jurors, witnesses, attorneys and the general public within the Second Judicial Circuit. As in the instant case, it was imperative that these services not be interrupted and that unnecessary transitional difficulties be kept to a minimum. To accomplish this, this court did not enjoin performance of the contract in question, but rather prohibited the defendant from exercising an option to extend the contract. 41 Fed.Cl. at 324. In addition, the court required the defendant to complete a resolicitation of the required services in time to ensure that a new awardee could begin performance by the time the prior contract terminated. *Id.* The court believes that similar relief is appropriate here.[20]

### C. Public Interest

 It is beyond peradventure that the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid. *See Cincom Systems, Inc. v. United States,* 37 Fed.Cl. 266, 269 (1997); *Magellan,* 27 Fed. Cl. at 448. *See also Parcel 49C Ltd. Partnership v. United States,* 31 F.3d 1147, 1153 (Fed.Cir.1994). "It is equally clear, however, that a procuring agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." *Aero Corp. v. United States,* 38 Fed. Cl. 237, 242 (1997). *See also Magellan,* 27 Fed.Cl. at 448. Moreover, the public interest balance must take into account the need for the defendant to maintain security at the affected facilities. *See Cincom,* 37 Fed.Cl. at 269 (noting that the public interest militates against awarding injunctive relief when national security interests are concerned); *Southwest Marine, Inc. v. United States,* 3 Cl.Ct. 611, 613 (1983) (same). But, again, this court may take this interest into account not only in deciding whether injunctive relief is appropriate, but also in crafting appropriate injunctive relief. Accordingly, the court finds that granting plaintiff's request for a permanent injunction would not be contrary to the public interest.

the denial of the right to have a bid fairly and lawfully considered constitutes irreparable harm. *See Ellsworth Assocs., Inc. v. United States,* 45 Fed.Cl. 388, 398–99 (1999) (citing cases). *But see Minor Metals, Inc. v. United States,* 38 Fed.Cl. 379, 381–82 (1997) (noting "economic harm without more, does not seem to rise to the level of irreparable injury").

20. Plaintiff argues that this court should direct the award of the contract to it. Some courts have concluded that a court may order such an award where "it is clear that, but for the illegal behavior of the agency, the contract would have been awarded to the party asking the court to order the award." *Delta Data Sys. Corp. v. Web-*

*ster,* 744 F.2d 197, 204 (D.C.Cir.1984). Leaving aside the question whether this legal standard is correct, it remains that this is not a case in which it is clear that, but for the errors committed, the plaintiff would have been awarded the contract. Moreover, in balancing the hardships in question, the court also rejects plaintiff's request that the court simply order the defendant to reexamine the prior bids consistent with this opinion and not resolicit the services in question. In particular, the court rejects this approach because it is now more than eighteen months since the contract in question was awarded and plaintiff waited almost a year of that time before pressing its request for an injunction.

## IV. CONCLUSION

For the reasons stated above, the court concludes that plaintiff has demonstrated, by clear and convincing evidence, that defendant acted unreasonably in evaluating plaintiff's past performance and that the defendant's actions prejudiced the plaintiff. Accordingly, the court GRANTS plaintiff's motion for judgment on the administrative record and DENIES defendant's motion for judgment on the administrative record. In addition, the court finds that plaintiff has established the prerequisites for the issuance of permanent injunctive relief in this case. In consideration of the above, IT IS ORDERED:

1. Plaintiff is entitled to bid preparation costs. *See* 28 U.S.C. § 1491(b)(2). The parties shall file a stipulation by January 17, 2000, representing such costs.

2. Defendant is enjoined from exercising its option on GS–10P–98–LSD–0024, thereby ending the term of the contract on May 31, 2000. On that date, said contract shall terminate.

3. In a manner not inconsistent with this opinion, defendant shall initiate a resolicitation for services covered by the subject contract and award said contract in time to commence performance by June 1, 2000.

4. This opinion shall be published as issued after January 17, 2000, unless the parties identify protected and/or privileged materials subject to redaction prior to said date.

Upon receipt of the parties' stipulation regarding bid preparation costs, the Clerk shall enter judgment accordingly without further order of the court. No costs.

